## No. 7648.

## THE TERRE HAUTE AND INDIANAPOLIS RAILROAD CO. v. SCOTT ET AL.

STREETS. — *Title of Adjoining Proprietor.* — *Town Laid out by State.* — *Indianapolis.*—The State, in laying out for its seat of government, upon land donated by the United States for that purpose, the town of Indianapolis, and making and filing maps thereof, as required by law, vested in the town, for the use of the public, such rights to the streets and alleys, and such interest therein, as would have been vested in it if any citizen had been the proprietor of the land and had laid out the

| | |
|---|---|
| 74 | 29 |
| 125 | 477 |
| 74 | 29 |
| 139 | 301 |
| 74 | 29 |
| 148 | 369 |
| 148 | 370 |
| 74 | 29 |
| 155 | 25 |
| 156 | 92 |
| 74 | 29 |
| f169 | 577 |
| f169 | 578 |

town in the same way; and the grantee in fee simple, in a conveyance by the State through its agent, of a lot by its number, abutting upon a public street in said town, and his assignees, acquired such rights to said street and such interest therein as would be conferred by a like conveyance made by such a citizen proprietor of a town; that is, such grantee and his assignees took the fee, subject to the public use, to the center line of such adjoining street.

SAME. — *Railroad.* — *Appropriation of Land.* — *Construction of Charter.*— Where the charter of a railroad company provides that, in all cases where the owner of lands necessary for the use and construction of its road "shall refuse to relinquish the same to the corporation, or shall refuse to accept a fair compensation therefor," it shall be lawful for the corporation to enter and take possession of and use such lands, and that the owner of lands, who feels aggrieved or injured by such use thereof, shall make application to a justice of the peace for an appraisement of damages, and that there shall be no recovery by such owner unless such an application be made by him within two years, such provisions will be strictly construed as against the owner of land taken, and such limitation will not apply as against the owner of a lot abutting upon a public street of a city, incorporated under the general law for the incorporation of cities, upon his side of which street such railroad company has maintained its track for fifteen years, upon a level with the grade of the street, with the authority of such city, but without the consent of the owner of such lot, without having demanded of him a relinquishment of his title to the street, and without having offered him a fair compensation; and, against the railroad company so occupying the street, such adjoining proprietor may have the usual remedies for the protection of rights in real property.

From the Marion Superior Court.

*C. Baker*, *O. B. Hord* and *T. A. Hendricks*, for appellant.

*B. Harrison*, *C. C. Hines* and *W. H. H. Miller*, for appellees.

MORRIS, C.—The appellees, who were the plaintiffs below, in their complaint say, that for fifteen years last past they have been and still are the owners of lots 7, 8, 9, 10, 11 and 12 in square 92, in the city of Indianapolis; that said lots are contiguous to, and, on the south-east side thereof, for the distance of 600 feet, abut upon, Kentucky avenue, a public street in said city, and that, as the owners of said

lots, they are also the owners in fee, and have been during said fifteen years, of that portion of said street, for said distance, lying between their said lots and the center line of said street; that ingress and egress to and from said lots, during said period, have been obstructed and prevented on the north side thereof by eight railroad tracks, constructed and in constant use near thereto; that the plaintiffs have, during said time, used said lots for the purpose of storing thereon rough, hewn and dressed stone, and as a place for sawing, cutting and dressing stone for building purposes; that, in prosecuting their business, it is necessary that they should have free and uninterrupted access to their said lots, with horses and wagons.

They further say, that on the —— day of ————, 187–, the White River Iron Company, a corporation organized under the laws of the State of Indiana, without right, and without first causing damages to be assessed and tendered to the plaintiffs, and without their consent, entered upon, and laid a railroad track upon, that portion of said Kentucky avenue described as belonging to them. They further say, that the White River Iron Company was succeeded by the Capital City Iron Company; that the appellant, the railroad company, a corporation organized under the laws of the State of Indiana, procured an assignment and transfer to it, from said Capital City Iron Company, of said railroad track; that said appellant still maintains said railroad track, and still uses the same, and has for fifteen years used the same for the passage of locomotives and cars; that the occupancy of said street by the defendants and each of them, for railroad purposes, has always been without the consent of the plaintiffs.

The plaintiffs say they have been damaged by the unlawful use of said street by the appellant, in the sum of $20,000. They ask an injunction, and all other proper relief.

The appellant demurred to the complaint. The demurrer was overruled, and it excepted.

The appellant then answered the complaint in five paragraphs, the first being a general denial.

The second paragraph of the answer admits that the appellees are the owners of the lots as alleged, but avers that the lots are, and have been, within the limits of the town and city of Indianapolis ever since the 5th day of February, 1836; that, prior thereto, said lots were a part of the territory selected and laid off as a town, and site for the permanent seat of government for the State, under an act for the appointment of commissioners to select and locate the seat of government for the State, approved January 11th, 1820, an act appointing commissioners to lay off a town on the site selected, approved January 6th, 1821, and an act authorizing the agent of the State to lay off the lands belonging to the State into lots, and offer the same for sale, approved February 9th, 1831; that said commissioners laid out the town, made two copies of its plans, locating and marking thereon Kentucky avenue, and the lines, form and dimensions of said lots as the same were when the appellees purchased them; that Kentucky avenue was marked and designated on said plan as a street of said town; that two plans of the town were duly made, certified and disposed of as the law required, one being deposited with the Secretary of State, and the other with the agent of State for said town; that, under the act of February 9th, 1831, the agent of State of the town of Indianapolis made two complete maps of the town, designating the names and width of the streets and alleys, and the number and size of the several squares thereon, the number and size of in-lots and out-lots, and the forms, courses and distances of their boundaries, the contents and numbers of the several lots, which maps were disposed of by the agent as provided by law; that, in all respects, these maps were made, filed, endorsed, etc., as required by law; that, upon said maps, the width and courses of Kentucky avenue, Louisiana street and West street were

marked and designated; that the real estate described in the complaint was sold and conveyed by the agent of State of said town to one Dennis White, on the 12th day of December, 1835; that the title of plaintiffs to said lots is derived from the State, through the conveyance to said White; that the plaintiffs obtained title to lots 7, 8, 9 and 10 on the 6th day of August, 1860; to the two-thirds of lot 12 on the 6th day of August, 1860, and to the other one-third on the 22d day of January, 1864; to the two-thirds of lot 11, August, 1860, and to the other third ————.

It is then averred that on the 25th day of February, 1867, the common council of Indianapolis passed an ordinance, which has ever since been in force, authorizing the Indianapolis Furnace Company to lay a railroad track on said Kentucky avenue, which was subsequently amended so as to give the same privileges to its assignee; that this company constructed the railroad track complained of, and that appellant, as its successor and assignee, became the owner of said track on the 28th day of November, 1873, and has since remained such owner.

It is then averred that the appellant is a railroad company, organized under certain acts of the State of Indiana, to wit: An act to incorporate the Terre Haute and Richmond Railroad Company, approved January 26th, 1847; an act amendatory thereof, approved February 16th, 1848, and an act further amendatory thereof, approved January 13th, 1849. That the appellant accepted the act of January 13th, 1849, on the 12th day of February, 1849. It is further averred that on the 28th day of February, 1873, the appellant acquired, by assignment from the Capital City Rolling Mill Company, the successor and assignee of the Indianapolis Furnace Company, all the rights of the latter company, under said ordinance, to said railroad track, and then appropriated to its own use the ground upon which said track was built, and ever since has

held, occupied and used the same, subject to the rights of the public, for a railroad track, etc.

The third paragraph of the answer admits the plaintiffs' ownership of said lots, and the north half of Kentucky avenue, as stated in the complaint; but it avers that the appellant is a corporation, existing under the laws of the State; that said track was laid, and has been maintained, level and even with the grade of said avenue; that said avenue is a public street in the city of Indianapolis, a municipal corporation, existing under the general laws of the State, during the time mentioned in the complaint; that the plaintiffs' estate in said street, and during all said time has been, subject in all things to the right of use thereof as a public highway and street of the city for all the uses of a street; that said track was laid, and has been maintained, by the appellant as a part of its main line of railroad from Indianapolis to Terre Haute, for the transportation of freight and passengers by the appellant as a common carrier, without in any manner obstructing said avenue, or in any way inconsistent with the proper use of said track for transportation by means of cars drawn by steam engines, etc.

The fourth paragraph states that the lots mentioned in the complaint were part of a tract of land donated by the United States to the State of Indiana as a permanent seat of government; that it was properly selected and established by the State as the permanent seat of government; that it was, by the proper agents of the State, duly, and in accordance with law, laid out as a town into squares, lots, public streets and alleys, of which square 92 was one, and that said Kentucky avenue was one street, dividing said square; that two complete maps were made by the proper officers of said town and disposed of as the law required; that the north-west half of said square 92 was sold and conveyed by the agents of the State to Dennis White, on the 12th day of December, 1835, by and according to the description of said maps, as

follows : "North-west half of square 92, in the town of Indi-anapolis;" that the only right and title of said plaintiffs to said Kentucky avenue was derived and held by sale and con-veyance to their grantor by said description, and not other-wise : that said avenue was, during all said time in the complaint mentioned, a public street of the city of Indian-apolis, a city incorporated under the general laws of the State for the incorporation of cities ; that said railroad track is on a level with the grade of said avenue, and used for the transportation of freight, etc.

The fifth paragraph of the answer is like the fourth, ex-cept that it avers specially, as in the second paragraph of answer, the manner in which the appellant was organized, and that the railroad track was laid on said Kentucky avenue in such manner as not to obstruct the same ; that said lots and avenue in complaint mentioned have been at all times within and part of the city of Indianapolis, a city existing under the general laws of the State ; that said lots being the private property of the appellees and their grantors, and the said avenue a public street of said city, laid out, graded, etc., by said city, the plaintiffs had, at no time, any right, title or interest in said avenue other than as grantees of said lots in the complaint mentioned, by derivation thereof from said Dennis White ; that said city, by the gen-eral laws of the State, had and exercised exclusive control over the streets of said city, of which said avenue was one, and that before said railroad track was laid, said city granted to the Indianapolis Furnace Company, assignor and prede-cessor of appellant, a license to construct and maintain said railroad track, as the same was and had been laid and main-tained on said avenue by ordinances properly passed by the common council of said city, in February, 1867 ; that said ordinances have been continuously in force, etc.

The appellees demurred to the second, third, fourth and

fifth paragraphs of the answer. The demurrers were sustained and the appellant excepted.

The cause was submitted at special term to the court for trial. Findings and judgment for appellees. The appellant moved for a new trial, which motion was overruled and it excepted. The appellant appealed to the general term of said court. The judgment at special term was affirmed, and the appellant excepted.

The errors assigned by the appellant, on appeal from the special to the general term, are:

First. That the court at special term erred in overruling the appellant's demurrer to the appellees' complaint;

Second. That the court erred in sustaining the appellees' demurrer to the 2d, 3d, 4th and 5th paragraphs of the appellant's answer.

Third. The court erred in overruling the appellant's motion for a new trial.

The error assigned in this court is, that the court at general term erred in affirming the finding and judgment at special term. The evidence is set out in a bill of exceptions. It is not insisted by the appellant, that the evidence introduced by the appellees did not sustain their complaint, nor does the appellant ask that the judgment below should be reversed on the ground that the evidence was not sufficient to support the finding of the court. The appellant in the court below, at the proper time, offered to prove the facts alleged in the 2d, 3d, 4th and 5th paragraphs of its answer. The appellees objected, not to the form of the offer thus made, but on the ground that the facts, if proven, would constitute no answer or defence to the complaint. The court sustained the objection, refused to hear the offered proof, and the appellant excepted.

Counsel for the appellant neither waive nor press objections to the complaint. We think it states a cause of action, and that there was no error in overruling the demurrer to it.

The evidence established the facts stated in the complaint. If the demurrer to the 2d, 3d, 4th and 5th paragraphs of the answer were rightly sustained, there was no error in overruling the appellant's motion for a new trial. If these paragraphs were bad, there could be no error in ruling out testimony offered in proof of them. If the paragraphs were good, it was error to sustain the demurrers. We need not, therefore, separately consider the motion for a new trial. The questions arising upon the motion will be considered in disposing of the demurrers.

The first question discussed by counsel for the appellant is: Does the purchaser of a lot by its number, abutting upon a public street in a city duly laid out and incorporated, the location and width of its streets and alleys, and the number and size of its squares and lots having been properly marked and designated on plats and maps made and filed in strict accordance with the statutes of the State made for that purpose, take, as a part of or as incident to his purchase, the fee, subject to the public use, to the center line of the adjoining public street?

The appellant insists that the purchaser does not so take, but that the fee in the streets is in the city, and held by it in trust for the public use.

The lots described in the complaint were a part of a tract of land donated by the United States to the State, as a site for a permanent seat of government for the State. The town of Indianapolis was laid out by the State as its permanent seat of government, and included within its limits said lots and the street in dispute. The lots abutting upon Kentucky avenue were sold and conveyed by the State, through its proper agents, to one White, from whom the appellees derive title. In laying out the town of Indianapolis, making and filing maps as required by law, the State vested in the town for the use of the public such rights to, and interest in, the streets and alleys of the town as would have vested

in it had any citizen been the proprietor and laid out the town in the same way. And the deed to White gave him just such rights to, and interest in, the streets upon which the lots conveyed abutted, as would a like deed made by any other party who might have been the proprietor of the town.

It is insisted by the appellant, in an exhaustive argument, that the making and filing of maps of the town, as required by law, operated as a grant of the fee in the streets to the town, in trust for the public use. It is claimed that the language of the second section of the act of 1818 can not be reconciled with any other view; that the words "general warranty," as used in that section, are without meaning as to the donation of streets unless construed as indicating the quantity of the interest granted; that, as to streets, the words are meaningless and purposeless, unless they can have this operation. There is much plausibility and force in this reasoning, but we must regard the question as settled the other way in Indiana.

The case of *Cox* v. *The Louisville, etc., R. R. Co.,* 48 Ind. 178, is precisely in point. The decision was made upon great deliberation, after hearing arguments in a number of cases involving the same point, and the conclusion reached was, that the towns and cities of Indiana, laid out in accordance with the statutes of the State upon the subject, take but an easement in the public streets, and that the fee in the streets remains in the proprietor and his grantees of the lots abutting upon such streets. This case has been approved by this court in a number of subsequent cases : *Sharpe* v. *The St. Louis, etc., R. W. Co.,* 49 Ind. 296 ; *Ross* v. *Faust,* 54 Ind. 471 ; *Nelson* v. *Fleming,* 56 Ind. 310 ; *The Anderson, etc., R. R. Co.* v. *Kernodle,* 54 Ind. 314 ; *Roelker* v. *The St. Louis, etc., R W. Co.,* 50 Ind. 127. And these cases agree with the early case of *Conner* v. *The President, etc.,* 1 Blackf. 43.

It is said that in the case of *Cox* v. *The Louisville, etc., R. R. Co., supra,* the complaint alleged that the plaintiff

owned the street in fee; that the demurrer admitted this, and therefore the real question was not involved, though decided by the court. But clearly the court and counsel engaged in the case regarded the complaint as alleging ownership of the street merely by way of conclusion from the alleged ownership of the lot; and in this we think the court was right. While Cox does aver that he owned the street, etc., he does it in such a way as to show that the averment is simply an inference deduced from his ownership of the lot. So the pleading was understood by all, and the decision should have the same force as if there could be no question as to this.

It is further said that it was not averred in the complaint that maps of the city of Lafayette had been made and disposed of as required by law. This may be, but in deciding the case the court assumed that the law in this respect had been fully complied with. Judge DOWNEY says: "Conceding that the proprietor of the town complied with this law in every respect, that he made the plat and caused it to be recorded, indicating the location of the street and its width, and writing upon it its name or number, what was the effect or operation upon his ownership of the fee simple estate which he had in the land over which the street runs? It is not very clear that the second section of the statute has any reference to streets, lanes, and alleys, but we will concede that it has, and that streets, lanes, and alleys are among the 'donations or grants' mentioned in the section." Streets thus considered, the court say, belong to the owners of abutting lots, subject to the public easement. We approve the conclusion reached in this case.

It is alleged in several paragraphs of the answer, that the appellant took possession of the railroad track mentioned in the complaint fifteen years ago, and that portion of Kentucky avenue occupied by said track, and has used it continuously ever since as a part of its main line of railroad,

for the transportation of freight and passengers thereon, pursuant to the provisions of its charter. It is stated that the appellant was incorporated under an act, approved January 26th, 1847, Local Laws of 1847, p. 77, the fifteenth section of which, it affirms, was repealed by the third section of the act of January 13th, 1849, which was duly accepted by it. It is insisted that the third section of the act of 1849 not only repealed the fifteenth section of the act of 1847, but that it authorized the appellant, without notice to the land-owner or an offer to purchase the right of way through his lands, to enter upon and take possession of any land required for its right of way, or the construction of its road, and that unless the owner within two years from such entry made application in writing before some justice of the peace of the proper county, for compensation as provided in said section, it became seized of the land so taken in fee, and he waived all right to compensation.

The 18th section of the act of 1847, incorporating the appellant, provided that, when the corporation had procured its right of way as therein provided, it should be seized of the land so procured in fee. The 3d section of the act of January 13th, 1849, provides that, "In all cases where the owner or owners of lands, stone, [gravel, wood, or other materials,] necessary for the use and construction of said road, shall refuse to relinquish the same to the corporation, or shall refuse to accept a fair compensation therefor, it shall be lawful for the corporation, by their president, or by any superintendent, agent or engineer employed by them, to enter upon, and take possession and use the same, avoiding in all cases unnecessary damage or injury to the owners or proprietors ; and where the said owner or owners may feel aggrieved or injured in consequence of such use of land, or stone, [or other materials,] the person or persons so feeling aggrieved or injured, shall make written complaint before the nearest justice of the peace within the county where such

supposed injury has been done, particularly setting forth the nature and locality of the injury, and the interests of the complainant or complainants therein. Whereupon such justices of the peace shall require the president of said company to appoint one disinterested appraiser, who shall be a citizen of the county in which such justice has jurisdiction, and who shall not be a stockholder in said company, within thirty days from the date of such requisition of the justice, and notify such justice of the name and place of residence of such appraiser; such justice of the peace shall also require the complainant or complainants to appoint one disinterested appraiser, who shall be a citizen of the county, and shall not own land within three miles of the line of said road, and such justice shall thereupon summon the appraisers so appointed to meet on a certain day and select a third disinterested appraiser, who shall also be a citizen of that county, and shall neither own stock in said corporation nor land within three miles of the line of said road, and the three appraisers so appointed, after being duly sworn by said justice to do impartial justice between the complainant or complainants and the corporation, and to take into consideration the benefits resulting to the complainant or complainants by the construction of the road, according to the best of their judgment, shall upon actual trial and computation [view] of the supposed damages, make up their award, and report the same to such justice, who shall thereupon record the same, together with all costs, and enter his judgment and enforce its collection, in the same manner that other judgments are collected: *Provided*, that the complainant or complainants shall be liable to pay all costs, unless the award of the appraisers exceeds in amount the sum previously offered by the agents of the corporation as a compensation for the supposed injury; the decision and award of the appraisers, so made, shall be final between the parties, unless either party shall appeal," etc.

It then provides that the proceedings on appeal shall be conducted as in other cases of appeal; and then follows this proviso: "*Provided*, That no claim shall be recovered or paid by said corporation, unless the application therefor be made as herein provided, within two years next after the property shall have been taken possession of as aforesaid." Section 4 of this act provides, that so much of sections 13, 15 and 16 of the act of January 26th, 1847, incorporating the appellant, as conflicts with section 3 of the act of January 13th, 1849, shall be repealed.

We think that section 3, above recited, repeals section 15 of the act of January 26th, 1847. It covers the whole subject embraced by the latter section, and is inconsistent with all its provisions, except so much of it as relates to the refusal of the land-owner to relinquish to the corporation the land required, or to accept compensation therefor, but this portion of it is, in almost the same words, contained in section 3 of the act of 1849. So much of section 16 of the act of 1847 as provides for notice to infants, insane persons, etc., may not be repealed, nor is section 14, which provides for agreements to purchase the right of way, materials, etc.

It is claimed by the appellant, that, under section 3 of the act of 1849, it had the right to enter upon and take possession of Kentucky avenue and use and occupy the same, lay its track upon it and run its cars and locomotives over it, without the consent of the appellees, though they had not refused, nor had an opportunity to refuse, to relinquish their right in the street to the appellant, nor refused to accept fair compensation for said street.

The question is not whether the Legislature could have authorized the appellant thus to take and appropriate the appellees' property, but whether by this section such authority has been given to the appellant.

That this act, which ripens the possession of the appellant, taken without consulting the owners and, it may be, with-

out their knowledge, into a title in fee in two years, should be strictly construed, will hardly be questioned.

The appellant can only exercise this unusual and extraordinary power in cases where the law expressly confers it. The language of the section seems to be clear : "In all cases where the owner or owners of lands," etc., shall refuse to relinquish to the corporation, or shall refuse to accept a fair compensation "therefor, it shall be lawful for the corporation, by their president," etc., "to enter upon and take possession," etc., is the language of the section. The cases in which the corporation may enter upon and take possession of the land of another are clearly specified. The provisions of the section, though unusual and extraordinary, if limited to the cases specified, will neither be unusually harsh nor palpably unjust. If, under the power conferred, the corporation can only take possession of land which the owner has refused to relinquish, or for which he has refused to accept fair compensation, he can not, without negligence on his part, lose his rights. In such cases, he could hardly fail to obtain notice of the entry and possession of the corporation.

It can not be inferred, legally or logically, that because the law authorized the appellant to take possession of so much of another's land as might be necessary for the way of its road, on the ground that he had refused to accept fair compensation for it, it is authorized to take the land of others who have not refused, nor had an opportunity to refuse, such compensation.

It will not be pretended that, in the absence of statutory authority, the appellant could enter upon and take possession of the land of another without his consent. Section 3 of the act of 1849, which confers all the power the appellant has in this respect, says that upon the refusal of the owner to accept fair compensation, etc., it may enter. In no other case does the law authorize such an entry. No such authority can or should be implied. Mills Eminent Domain, sec. 105 ;

1 Redfield Railways, 232; *Eward* v. *The Lawrenceburgh, etc., R. R. Co.*, 7 Ind. 711; *Vail* v. *The Morris, etc., R. R. Co.*, 1 Zab. 189; *Doughty* v. *The Somerville, etc., R. R. Co.*, 1 Zab. 442; *The Mississippi, etc., R. R. Co.* v. *Rosseau*, 8 Iowa, 373; *Dyckman* v. *The Mayor, etc.*, 5 N. Y. 434.

In the case of *Bonaparte* v. *The Camden, etc., R. R. Co.*, Bald. 205, the question was whether the company had the right to enter and take possession of the complainant's land, without filing a survey of its road as required by its charter. The company claimed that it had the right, but the court held otherwise—that the filing of the survey was a condition precedent to the right of entry.

In the case of *The Indiana Central R. W. Co.* v. *Oakes*, 20 Ind. 9, referred to by the appellant's counsel as supporting their views, Judge DAVISON, on p. 13, says: "It is, however, contended that until the plaintiffs had refused to relinquish their property to the corporation, or to accept a fair compensation therefor, the company had no authority under her charter to possess and use it; and having appropriated it without demanding such relinquishment, or offering such compensation, she was guilty of trespass. This proposition, when applied to the case before us, seems to be incorrect. The owners of the property being infants, were, for that reason, not of legal capacity to give a valid relinquishment, or to agree upon a fair compensation. And the defendants were therefore excused from the demand and offer, which, in ordinary cases, are required by her charter."

By the clearest implication the court holds that, in a case like this, there must be such demand and offer. Whether or not the infancy of the land-owner should be held to enlarge the power of the company, and enable it to enter upon land which, but for such infancy, it would have no right to take, is a question not involved in this case, as the appellees are not alleged to have been infants at the time the entry was made.

The case of *Swinney* v. *The Ft. Wayne, etc., R. R. Co.*, 59

Ind. 205, is referred to by the appellant as supporting its position. It seems to have been held, in this case, that it was unnecessary, in proceedings by a railroad company to appropriate land for railroad purposes, to aver and prove that an effort had been made to agree with the owner for the purchase of the land proposed to be appropriated. The question arose upon an appeal from an assessment of damages, and it might well have been held that, upon appeal, the question should be considered as waived ; that, if the owner wished to raise such a question, he should do it by a proceeding to enjoin the company. This is not the reason assigned by the court, it is true, and it may have had no influence in the determination of the question, but if the decision means that where a statute authorizes a railroad company to institute proceedings to condemn the land of others, upon its failure to agree with the owner for the purchase of the property, it may, without any effort so to agree and in disregard of the statute, at once institute proceedings to condemn, we are not disposed to follow the decision. The language of the general statute upon the subject differs, in some respects, from the 3d section of the act of 1849. Under the latter we think it clear that a demand of the relinquishment of title and the offer of fair compensation are conditions precedent to the right of appellant to enter upon and take possession of the lands of others.

Assuming that the entry of the appellant was valid, we are unable to see how the limitation insisted upon could be avoided ; but, holding as we do, that its entry and possession were unauthorized and wrongful, it could thereby secure no right as against the appellees. *Meriam* v. *Brown*, 128 Mass. 391 ; *Daniels* v. *The Chicago, etc., R. R. Co.*, 35 Iowa, 129 ; *Doe* v. *The Manchester, etc., R. W. Co.*, 14 M. & W. 687 ; *Stacey* v. *The Vermont, etc., R. R. Co.*, 27 Vt. 39.

The decision below should be affirmed.

---

Per Curiam.—It is ordered that, upon the foregoing opinion, this cause be in all things affirmed, at the costs of the appellant.

Note.—Elliott, J., having been of counsel in this case, was absent.