No. 10,826.

The Lake Shore and Michigan Southern Railway Company *v.* The Cincinnati, Wabash and Michigan Railway Company.

Eminent Domain.— *Railroad Crossings.*—*Condemnation Proceedings.*—*Instrument of Appropriation.*—*Pleading.*—In proceedings by one railroad company to condemn and appropriate a right of way across the tracks of another, under subdivisions 5 and 6 of section 3903, R. S. 1881, the complaint or instrument of appropriation set forth the effort to reach an agreement as follows: "Having located the line and route of its said proposed extension of road over the lands and premises hereinafter described, and having attempted and failed, and being unable to agree with respondent in regard to the terms of, or in regard to the compensation therefor," the plaintiff did take and appropriate said way.

*Held*, that the effort to agree must be made on the three points: Compensation, points of crossing, and manner of crossing and connections, and such effort is a condition precedent to the exercise of the power to appropriate.

Lake Shore and Michigan Southern R'y Co. v. C., W. and M. R'y Co.

*Held*, also, that the instrument of appropriation must affirmatively show the agreement, or failure to agree, on each of these three points, and was, therefore, insufficient in this case.

*Held*, also, that the word "terms," as used in the instrument of appropriation, is not broad enough to cover the three essential points.

SAME.—*Waiver.—Pleading.*—There may be a waiver of an agreement, or of an effort to agree, but such waiver should be directly averred.

SAME.—*Appeal as Waiver.*—An appeal is not a waiver of any objection seasonably and appropriately made.

SAME.—*Quære.*—Does 'the statute confer the right upon a railroad corporation to appropriate and condemn a longitudinal part of the right of way of an existing railroad company?

SAME.—*Nature of Civil Action.*—Condemnation proceedings are not in the strict sense an ordinary civil action.

STATUTORY CONSTRUCTION.—Where the meaning of a statute is not clear courts will so construe it as to promote equity and justice.

From the Elkhart Circuit Court.

*J. A. S. Mitchell* and *J. H. Baker*, for appellant.

*J. S. Frazer, W. D. Frazer, C. Cowgill, H. B. Shiveley* and *C. E. Cowgill*, for appellee.

ELLIOTT, J.—The first question, presented in various methods, which we are required to decide, is this: What must be done by a railroad company, engaged in constructing a new road, to entitle it, as of right, to build its track across the road of a company previously built?

There is no doubt as to the right of one railroad company, upon the payment of compensation, to construct its road across that of another road already in existence, but the terms and conditions upon which it can be done are such as the law prescribes. Lewis Eminent Domain, section 268. A condition precedent to the right to cross is a compliance with the statute.

The road seeking the right to cross another must affirmatively show that it has performed the acts which the statute requires. In a recent work the law upon this subject is thus stated: "The petition should comply with the statute in all respects, and should contain all the facts necessary to give jurisdiction." Lewis Eminent Domain, section 348. Farther

580    SUPREME COURT OF INDIANA,

Lake Shore and Michigan Southern R'y Co. *v.* C., W. and M. R'y Co.

·on in the same section the author says : " The allegations of the petition should be certain and positive. But where allegations were followed by the phrase ' as we believe,' they were held to be sufficiently positive. If the statute requires the petition to contain a particular statement, its omission will be fatal."

The general rule is that material matters must always be directly alleged, and not stated by way of recital, and there is no reason why the rule should not apply to such cases as this. *Jackson School Tp.* v. *Farlow,* 75 Ind. 118; *Shafer* v. *Bear River, etc., R. R. Co.,* 4 Cal. 294; *Hall* v. *Williams,* 13 Minn. 260.

It is, therefore, necessary in such cases as this to ascertain, first, what facts must be stated, and, second, whether they are positively stated, or merely stated by way of recital.

The contention of counsel upon the particular question stated, narrows the inquiry, for, as we understand the argument, the only point in which the petition, or instrument of appropriation, is asserted to be defective, is in the failure to aver that the two corporations " can not agree upon the amount of compensation to be made therefor, or the points or manner of such crossing." The statute which governs contains this provision, " And if the two corporations can not agree upon the amount of compensation to be made therefor, or the points or manner of such crossings and connections, the same shall be ascertained and determined by commissioners." R. S. 1881, section 3903, sub. 6.

It seems clear to us that this provision is not to be restricted to the single element of compensation, but that it must be construed as embracing also questions concerning the location and method of constructing the crossing. The language is not ambiguous, and it certainly embraces three very different and very material things—compensation, the point of crossing and manner of crossing.

We can not see how it is possible, looking solely to the words of the statute, to hold that all that it refers to is the mat-

ter of compensation, since to reach such a conclusion many strong and clear words must be rejected. The language is plain, but plain as it is we think it not more plain than the object the Legislature intended to accomplish. It is very evident that the Legislature did not mean to invest the younger company with power to cross at any point and in any mode it might elect, but that, on the contrary, it meant to prevent the arbitrary exercise of the right to cross the older line. The purpose was to give both corporations an opportunity to agree, if they could, as to the compensation, the point of crossing and the mode in which the crossing should be constructed. It was the intention of the Legislature to prevent the arbitrary exercise of power by either the senior or the junior corporation, and to compel them to negotiate concerning the crossing, or, if the senior refused, to enable the junior to bring the matter before the court for consideration and judgment upon the three elements involved —the compensation, the point of crossing and the mode of conducting the one line across the other. This must be the interpretation of the statute, otherwise we must reject many words as meaningless and disregard the appropriately expressed intention of the Legislature. This result must be averted, for a firmly settled rule of law declares that 'no word or clause in a statute shall be regarded as meaningless or superfluous if it can be avoided. But there is much reason and justice in the statute as it is written, for, although it is just that the older company should not be allowed to arbitrarily dictate terms to the younger, it is equally just that the younger should not be allowed to make a crossing regardless of the rights of the older company. Our conclusion is that the negotiations which the statute requires the two corporations to conduct, are negotiations concerning the three things we have enumerated, and that if these three things can not be settled by negotiation they must be brought before the appropriate tribunal for adjudication.

The instrument of appropriation does not aver in positive

terms that there was any failure to agree even as to the element of compensation, for all that is alleged on this subject is thus pleaded : " Having located the line and route of its said proposed extension of road over the lands and premises hereinafter described, and having attempted and failed, and being unable to agree with respondent in regard to the terms of, or in regard to the compensation therefor," the plaintiff did take and appropriate said way.

The allegations as to compensation seem to be made only by way of recital, and, therefore, probably insufficient; but, however this may be, there is certainly no allegation at all as to the other elements—the point of crossing and the mode of conducting the one line of railroad across the other. The petition does not, therefore, show any attempt to bring about an agreement upon the points required by the statute, for two, at least, of the essential points are not mentioned. For this reason we think the petition or instrument of appropriation is insufficient. It is defective not simply in form, but in substance. It is defective in substance because it fails to show an attempt to secure the agreement for which the statute provides. This defect is far-reaching, for, if the questions as to the point of crossing, and the mode of constructing the crossing, are not brought before the court, the senior corporation is practically denied the right to have two very important questions litigated and adjudicated. These two questions may, it is easy to conceive, often be of much more importance than the question of compensation. If the questions as to the place of crossing and the manner of making it are not the subject of judicial investigation, then it must be true that these are matters to be settled by one alone of the two corporations, and this would be plainly unjust, since the rights of both are directly involved and the rights of both vitally affected.

It is not equitable that either the senior or the junior corporation should be at unrestrained liberty to dictate terms to the other. Equity and justice require that both should be

heard in the matter, and that if no agreement can be effected, then, that the courts, with both parties before them, in due course of law, should adjust the dispute with due regard to the rights of each.

It is proper for courts to have regard to consequences in giving effect to statutes. They can not, to be sure, disregard the plain words of the statute, but it is nevertheless their duty, wherever it can be done without violence to the language employed, to so construe statutes as to give them a reasonable, just and beneficial effect. This doctrine has been repeatedly stated by the highest of the national courts, and has been acted upon by our own court. *United States* v. v. *Kirby,* 7 Wall. 482; *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420; *Rodman* v. *Reynolds,* 114 Ind. 148; *Humphries* v. *Davis,* 100 Ind. 274.

The doctrine is, as every one knows, much older than any American court. Broom Legal Maxims, 184; Ram Legal Judgments, 113.

We do not, of course, assert that the judiciary will determine matters of policy or expediency, for we broadly concede that those are purely legislative questions; but we do assert that the judiciary will, where it can be done without departing from the words of a statute, give the statute such a construction as will avert evil or unjust results. Here, however, the language of the statute suggests and develops the policy which is obviously the just one, and we need do no more than give a fair and reasonable effect to those words.

It appears from the record that the appellant was called upon to agree as to the matter of compensation only, and that the course pursued was such as not to bring forward for consideration the two other elements involved—the place of crossing and the manner of crossing—but to exclude them.

The position of the appellee, as indicated by the record and the method of pleading, was, that only the matter of compensation was to be agreed upon, and that the two other elements were not the subjects of negotiations and agreement.

No other effect can be attributed to the allegations as they appear of record, since they confined, as far as it was in appellee's power, the questions to the single one of compensation, thus, impliedly, at least, affirming that the others were not the subject of negotiation. As it required the appellant to negotiate upon one only of three questions, it did not make such an effort to secure an agreement as the law requires. The appellant was not bound to enter upon negotiations on a false basis, and by restricting the negotiations to a single question, the appellee wrongfully endeavored to draw it into negotiations upon a false basis, thus disobeying the law and rendering the proceedings ineffective.

The conclusion which we have reached is, in our judgment, maintainable on reason without the aid of authorities, but authorities are not wanting. The rule we approve is thus stated by Mr. Lewis: "Statutes conferring the power of eminent domain usually require that an attempt shall be made to agree with the owner of property desired, before instituting proceedings to condemn it. In whatever form of words this direction is couched, it is generally held to be imperative, and a condition precedent to the exercise of compulsory powers. It is generally held that the inability to agree should be alleged and proven." Lewis Eminent Domain, section 301. Very many cases are collected and cited in support of the text. We are aware of the decision in *Swinney* v. *Fort Wayne, etc., R. R. Co.*, 59 Ind. 205, that it is not necessary for a railroad company seeking to appropriate land to precede its application to condemn by an offer to purchase, but conceding for the present the soundness of that decision, and postponing the examination of it until we dispose of the point under immediate mention, we affirm that it has no application to this point, and that is sufficient at this place except, perhaps, that we ought to give our reason for denying its relevancy, and that we do by affirming that the statute which rules this point does imperatively require that there shall be a precedent effort to adjust the dis-

NOVEMBER TERM, 1888.    585

Lake Shore and Michigan Southern R'y Co. v. C., W. and M. R'y Co.

puted questions by an agreement.    We know, too, that in *Ney* v. *Swinney*, 36 Ind. 454, it was decided that the fact that there was a precedent effort to secure an agreement was not a jurisdictional one, and without now questioning the correctness of that ruling, we dispose of the case as we did *Swinney* v. *Fort Wayne, etc., R. R. Co., supra*, by denying its relevancy.    We may with strict propriety add another reason and that is this :    In the case cited the question came before the court in a collateral proceeding, while here it is presented by an appropriate direct attack ; so that, here, the question is not entirely one of jurisdiction as in *Ney* v. *Swinney, supra*, it certainly was.    The authorities, with little, if any, conflict, sustain us in affirming, as we have done, that it must be affirmatively shown that an effort was made to secure such an agreement as the statute requires.    It is not enough to show, even by direct averment, that there was an effort to obtain some agreement, but it must be shown that the effort was to obtain the agreement which the statute prescribes.    The statute of New York is the same as ours, and the rule which prevails there is thus stated in one case :

"The petitioner had no right to resort to the court, *until a failure to agree* as to the matter specified.    Such failure was a condition precedent to any standing in court ; and there could be no failure or inability to agree, within the meaning of the statute, until some efforts to agree had in good faith been made." *Matter of Lockport and Buffalo R. R. Co.*, 77 N. Y. 557–563.

In another case it was said :    "It is a fatal objection to the order in these proceedings, so far as the rights of the Troy and Bennington Railroad are involved, that the petition does not show that any attempt was made to agree with that company as to the points or manner of crossing its road or the compensation to be made therefor.    This is a jurisdictional fact.    The attempt and failure to agree is a condition precedent to the authority of the court to appoint commissioners, and unless this is averred in the petition, there is no juris-

diction." *In re Hoosac Tunnel and Western R. W. Co.*, 79 N. Y. 69.

Another case also contains this statement: "The very purpose of providing for the appointment of these commissioners is to determine, in case of dispute, at what points the crossings shall be made, and in what manner, and it is the obvious duty of these commissioners to see that the crossings are not made in such a manner, or at such points, as to unnecessarily interfere with the operation of the road to be crossed." *Matter of Boston, etc., R. W. Co.*, 79 N. Y. 64.

The decided cases go further than we are required to do here, for they hold that the failure to agree must appear in order to give jurisdiction. The rule is thus stated by a text-writer: "The record of the preliminary proceedings should affirmatively show a failure to agree. The refusal of the owner is a jurisdictional fact, and is not to be eked out by extraneous evidence." Mills. Eminent Domain, section 107. We do not deem it necessary to cite the cases, and content ourselves with affirming that they are very numerous, and are unusually harmonious.

We can not assent to the proposition of appellee's counsel that the instrument of appropriation sufficiently avers that there was an effort to agree as to the point and manner of crossing. What is averred as to compensation can not justly be held to be well alleged, since it seems to us that it is stated only by way of recital; but, for the present, waiving this point, and granting that the allegation is not simply a recital, we are compelled to hold that there is no sufficient averment at all upon any other question except that of compensation. Counsel say: "By the word 'terms' we meant the conditions upon which such crossing might be had, referring to those not only of point and of place, but to the conditions also that must be included in the word 'manner,' as used in the statute."

We have given the subject much study, and have endeavored to give the pleading the construction for which coun-

sel contend, but this we can not do. The word "terms" can not be extended as counsel insist. Certainly it can not be construed to mean place of crossing, nor do we think it can be construed to mean the manner of constructing the crossing. In strictness, the word "terms" refers only to the compensation, for this is the fair construction of the whole averment. It reads—and we repeat it for the sake of clearness— "And having attempted and failed, and being unable to agree with the respondent in regard to the terms of, or in regard to the compensation therefor, do now, by these presents, under and pursuant to the provisions and requirement of the act of the General Assembly, take and appropriate an easement in and the right to use the lands and premises held by the respondent as aforesaid, for the purpose of constructing, owning and operating in perpetuity its, the said petitioner's, railway over, across and upon the same."

It is manifest that the word "terms" can not be so stretched as to include the three things—compensation, place of crossing and the mode or manner of crossing—without doing violence to the word, and to those words with which it is associated. At all events, there is not that directness and definiteness in averring the material and indispensable facts which the law requires.

As we have already said, the question here is not solely one of jurisdiction, for here we have a direct attack, and the sufficiency of a pleading appropriately questioned. We are, therefore, confronted with the questions whether sufficient facts are pleaded, and whether they are well averred. The questions before us can not, it is clear, be disposed of by asserting that they are not jurisdictional. If it should be conceded that they were not jurisdictional, we should still be compelled to decide whether facts sufficient were well pleaded. The case of *Borland* v. *Mississippi, etc., R. R. Co.*, 8 Iowa 148, may consequently be conceded to be well decided, and yet be justly declared to be not of governing or even of per-

suasive force. Its relevancy, on the contrary, must be explicitly denied.

It is not to be forgotten that in directly assailing a pleading, only such facts as are sufficiently pleaded are admitted. A fact not well pleaded adds no strength to the pleading. This is proved by the authorities cited, and results from an old rule which has for ages passed unchallenged.

We agree with the appellee's counsel that the inability to agree is the thing required; but we must add to their proposition that the thing required is the inability to agree upon the three things named in the statute. The agreement, if successful, or, if unsuccessful, the effort to agree, must extend to all of the material things of which the statute makes mention. Counsel cite us to *Williams* v. *Hartford, etc., R. R. Co.*, 13 Conn. 397, *Tucker* v. *Erie, etc., R. R. Co.*, 27 Pa. St., 281, *Mississippi, etc., R. R. Co.* v. *Rosseau*, 8 Iowa, 373, *United States* v. *Reed*, 56 Mo. 565, *Booker* v. *Venice, etc., R. W. Co.*, 101 Ill. 333, Mills Eminent Domain, sections 108, 109, Pierce Railroads, 181, 182. But we do not regard these authorities as decisive of the question; indeed, we do not think they meet the question as it comes to us.

We have not gone counter to them, for we agree with them in the main, and hold that all that is required is the fact of the inability to agree; but where we differ from the counsel is in holding that the inability to agree is not sufficient unless it appears that the effort to secure an agreement extended to all of the things specified by the law, and that it must be well pleaded. To be well pleaded the facts must be so averred that a definite issue can be evolved. It is here that the views of court and counsel diverge, and it is because they thus diverge that the authorities cited do not control our judgment. They are not broad enough to meet the whole question, but leave much of it, and a material part of it, utterly unsupported.

There may, we doubt not, be a waiver of an agreement, or of an effort to agree, but where there is a waiver that fact

should be directly alleged.   This, certainly, is in accordance with the long and well settled rules which prevail in ordinary cases.   But, passing, without deciding, this precise question, we hold that where objections are seasonably and appropriately made there can be no waiver.   So the objections were made in this case.   We can not conceive how there can be a waiver where an objection is appropriately made at the earliest opportunity to a petition or to an instrument of appropriation.   We do not believe that the waiver of a material right in the nature of a condition can not be presumed or inferred.   Neither do we believe that an appeal which invokes the powers of the court is, of itself, a waiver of any valid objection to the proceedings.   If it were so, then, in no case where an appeal is taken, would there ever be any other question open to investigation than that of compensation.   It is our conviction that the law never meant to thus limit the judicial investigation invoked by the appeal.   Parties, doubtless, may limit it, but it is not to be presumed that they have done so in the absence of facts creating the presumption.

The language used by Mr. Mills, in the section counsel refer to, is not entirely accurate, but his meaning is not that attributed to him by counsel, for it is quite apparent that he refers to cases where the record shows that the only point in issue was that of compensation.   Mills. Eminent Domain, section 109.   So far as concerns the waiver of all efforts to agree, it is clear that this author refers only to cases where the record shows that there was a waiver.   Mills Eminent Domain, section 108.

Counsel have argued a question of much more importance and difficulty than those we have decided, and that question is whether, upon a proper instrument of appropriation, a junior corporation can condemn part of the right of way of an existing railroad company, and by this means acquire a longitudinal part of the right of way.   On the one hand, it is affirmed that subdivision five of section 3903, R. S. 1881, confers the power to condemn ; while, on the other,

it is contended with earnestness, and with no little plausibility, that the statute confers authority to condemn only for the purpose of intersecting, connecting or crossing. Both sides agree that property once appropriated can not be again condemned unless the statute confers that power, but the appellee's counsel vigorously and ably argue that the statute does confer this power, and that, under it, part of a right of way of the older corporation may be condemned and a line of road laid parallel with the existing track. We have not decided this question for the reason that, in our judgment, we first encounter a question which is decisive of this appeal. We think it not inappropriate, however, to cite the authorities which are at hand, for the question is one that will probably require decision in some other case. *Baltimore, etc., R. R. Co.* v. *North,* 103 Ind. 486; *Hickok* v. *Hine,* 23 Ohio St. 523 ; *Appeal of Pittsburgh Junction R. R. Co.,* 17 Pitts. Leg. J. 95 ; *Illinois, etc., R. R. Co.* v. *Chicago, etc., R. R. Co.,* 30 Am. & Eng. R. R. Cases, 287 ; *Denver, etc., R. R. Co.* v. *Denver, etc., R. R. Co.,* 14 Am. & Eng. R. R. Cases, 83 ; *Duncan* v. *Pennsylvania R. R. Co.,* 94 Pa. St. 435; *Matter of Boston, etc., R. R. Co.,* 53 N. Y. 574; *State* v. *Montclair R. W. Co.,* 35 N. J. L. 328; *Alexandria, etc., R. W. Co.* v. *Alexandria, etc., R. R. Co.,* 75 Va. 780 (40 Am. Rep. 743, and note) ; *Boston, etc., Railroad* v. *Lowell, etc., Railroad,* 124 Mass. 368 ; *Contra Costa, etc., R. R. Co.* v. *Moss,* 23 Cal. 323 ; *Thomas* v. *Railroad Co.,* 101 U. S. 71 ; *City of Clinton* v. *Cedar Rapids, etc., Railroad Co.,* 24 Iowa, 455 ; *Attorney General* v. *Ely, etc., R. W. Co.,* L. R. 4 Ch. App. 194.

The gravity and importance of the question is such that we have concluded that it should only be decided in a case where it is indispensably necessary to a proper and adequate judgment. We do not, as we have indicated, believe this is such a case, for we think that our decision upon a point which precedes the one mentioned fully and properly disposes of this appeal. We believe our duty is done when

we fully meet and decide a question which leads to a reversal without investigating and deciding questions which lie beyond. Where a material question first in point of priority is decided, all the questions that the record legitimately brings to us are disposed of within the meaning of section 5 of article 7 of our constitution. That provision can not mean that in cases of reversal every point must be decided, even though some one of them completely disposes of the case; nor does it mean that the court must write upon all questions, but that it must write on such only as are decided. This court has uniformly acted upon the rule that where there is a judgment of reversal, it will not consider all of the questions urged or presented, except in cases where it is clear that they will arise on a new trial, and even then the questions are not decided because it is the duty of the court to decide them, but because it is best to do so as a matter of expediency. We doubt whether a single volume of our reports can be found, from the time our constitution went into effect until the present, which does not contain cases in which this rule was acted upon by the court. Questions which come after a pivotal one that controls the case, and the decision of which completely disposes of the appeal, can not, as a general rule, be accurately said to be presented by the record in cases of reversal, although there may be, and perhaps are, exceptional cases. If it were otherwise the court might often and often be required to go far beyond the decision of a question which disposes, adequately and properly, of a pending appeal, and we think it evident that only such questions as must be decided in order to justly and completely dispose of the case before the court, can be said to be "questions arising in the record," and questions upon which the court must write. If, to sum up in a short way, the court decides all the questions essential to a full and effectual disposition of the case at its bar and writes on those questions, it has done its full duty under the constitu-

tion. *Trayser* v. *The Trustees, etc.*, 39 Ind. 556; *Willets* v. *Ridgway*, 9 Ind. 367.

We do not deem it necessary to a final disposition of this appeal to decide whether a junior corporation can in any event seize the right of way of a senior corporation, for the reason that we are satisfied that, conceding that the power to appropriate does exist in the junior corporation, that power can not be exercised until after there has been a fruitless effort to come to an agreement. There must, in our judgment, be an attempt to agree, and this, if not strictly a jurisdictional matter, is, at least, a condition precedent to the exercise of the power to appropriate.

We are inclined to the opinion that subdivisions five and six of section 3903, R. S. 1881, must be construed together, and that they must be regarded as containing the only grant of power to one railroad corporation to seize the property of another that is used for railroad purposes, no matter what may be the character of the property seized or the rights acquired. *Illinois, etc., R. R. Co.* v. *Chicago, etc., R. R. Co.*, 30 Am. & Eng. R. R. Cases, 287.

Those subdivisions read thus:

"*Fifth.* To construct its road upon or across any stream of water, watercourse, road, highway, railroad, or canal, so as not to interfere with the free use of the same, which the route of its road shall intersect, in such manner as to afford security for life and property; but the corporation shall restore the stream or watercourse, road or highway, thus intersected, to its former state, or in a sufficient manner not to unnecessarily impair its usefulness or injure its franchises.

"*Sixth.* To cross, intersect, join, and unite its railroad with any other railroad before constructed, at any point on its route and upon the grounds of such other railroad company, with the necessary turn-outs, sidings, switches, and other conveniences, in furtherance of the objects of its connections; and every company whose railroad is or shall be hereafter intersected by any new railroad shall unite with

the owners of such new railroad in forming such intersections and connections, and grant the facilities aforesaid; and if the two corporations can not agree upon the amount of compensation to be made therefor, or the points or manner of such crossings and connections, the same shall be ascertained and determined by commissioners, to be appointed as is provided hereinafter in respect to the taking of lands; but this section is not to affect the rights or franchises heretofore granted."

We do not, however, decide this question, for we think that if the provisions of the statute which refer to the seizure of lands or property owned by individual citizens be alone considered, still the result must be adverse to the appellee and decisive of this appeal. It is obvious that if the construction suggested be the correct one, then the provisions as to the agreement relate to the longitudinal strip as well as to the crossing, and the last clause of sub-section six applies only to proceedings subsequent to the effort to agree.

It is our judgment, reached after full deliberation and careful study, that a railroad corporation can not acquire the property of a citizen, or of another railroad corporation, without having first endeavored to secure it by agreement. This is so, even though the statute applicable to the acquisition of property from individuals be alone considered as supplying the governing rule, and more clearly it is so, if possible, where the provisions of the statute we have copied (sub-sections five and six) are taken as furnishing the rule of decision, since it is evident from what we have said that an agreement, or an effort to secure an agreement, upon the three matters designated is a condition precedent in all cases where there are no facts constituting a waiver. Many of the arguments and many of the authorities we have already adduced support and confirm our conclusion.

We are at this point necessarily required to examine with care the case of *Swinney* v. *Fort Wayne, etc., R. R. Co., supra.*

Our duty is the less delicate for the reason that the court has already declared its disapproval of the decision in that case. This was its declaration in the case of *Terre Haute, etc., R. R. Co.* v. *Scott,* 74 Ind. 29. The opinion in *Swinney* v. *Fort Wayne, etc., Co., supra,* upon the point here under immediate discussion, was not, it is evident, very carefully considered, for all that was said is this: " We think the court did not err in rejecting the first exception to the award. It is not necessary that the appellee should have offered to purchase the land before commencing the proceedings to appropriate it. There are decisions in other States, however, which hold such an exception good; but, upon examination, we find that they rest upon statutes which allow the appropriation to be made by a legal proceeding only upon the refusal of the land-owner to convey upon application of the company desiring to obtain the lands." It is impossible for us to resist the conviction that the court did not accurately construe our statute. We are forced to the conclusion that the Legislature intended to require that an effort should first be made to procure the property by agreement. This intention is manifested by appropriate words, and is evident from an inspection of the entire statute. It is, as we adjudge, clearly manifested in several clauses of section 3907, one of which reads as follows: " If the corporation shall not agree with the owner of the land, or with his guardian, if the owner be incapable of contracting, touching the damages sustained by such appropriation, such corporation shall deliver to such owner or guardian, if within the county, a copy of such instrument of appropriation." We can perceive no reason for affirming that this clause in itself does not imply that before seizure there must be some effort to secure the property by agreement. The thing to be first done is to secure the property by contract, and, then, if this effort is unavailing, proceed to acquire the property by condemnation. We believe, also, that the court in the case we are criticising overlooked the policy which our Legislature, influenced, it is

just to presume, by the legislation of other States, intended to establish. More remains to be said on this point, and that, in brief, is this : The general policy of the law is not to take by force of law that which may be acquired by contract. It is no more than just that a property owner should be given an apportunity to sell his property, or refuse to sell it, before asking the aid of the law to take it from him. It is, it needs no argument to demonstrate, bare justice to award a property owner an opportunity to reject or accept before forcing him, by legal proceedings, to give up his property. If, without doing violence to the words of the statute, a wise and just policy can be established, it is the duty of the courts to so interpret the statute as to establish that policy. A construction which will overturn a salutary policy or work injustice is, if possible, to be avoided. Mr. Bishop says : " The interpretation should lean strongly to avoid absurd consequences, injustice, and even great inconvenience ; for the legislative meaning is to be carried out, and it can not be supposed to be any of these." Written Laws, section 82.

We regard it as clear that the Legislature did not mean to take by force of law the property of a citizen or corporation and bestow it upon another, without first giving him an opportunity to part with it by agreement, or to refuse to part with it. The power of eminent domain, guarded as carefully as it can be, is a very high and dangerous one, and no restriction which tends to the better protection of the owner whose property is taken against his will, should be swept away by the courts, except in cases where the language of the statute is so clear as to leave nothing for the courts to do but give effect to its very words. We do not mean, of course, that courts can substitute their judgment for that of the Legislature, or that they can disregard the words of the statute ; we are very far, indeed, from sanctioning any such doctrine, for we have again and again declared that the courts can not determine questions of expediency or policy, but we do mean that where the meaning of the statute is

not clear the courts will so construe it as to promote equity and justice. No equitable considerations alone can, we affirm, authorize a court to disregard the language of an unambiguous statute; but equitable considerations, where they may be presumed to have influenced legislative action, and where the words are not clear, are entitled to high consideration from the courts, since it can not be presumed that the Legislature intended to violate the principles of natural justice. If there is doubt it will be resolved in favor of the presumption that the Legislature meant to do equity. Natural equity will not control the words of a statute where there is no uncertainty. However evil may be the results which will flow from an adherence to the words, no departure is possible where there is certainty; but where there is doubt that construction will be adopted which will prevent injustice.

We accept as substantially an accurate statement of the general rule, what is said in a recent work: "If the words of a statute, though capable of an interpretation which would work manifest injustice, can possibly, within the bounds of grammatical construction and reasonable interpretation, be otherwise construed, the court ought not to attribute to the Legislature an intention to do what is a clear, manifest and gross injustice. On the contrary, the presumption always is, where the design of an act is not plainly apparent, that the Legislature intended the most reasonable and beneficial interpretation to be placed upon it. It is obvious that the administration of justice requires something more than the mere application of the letter of the law." Endlich Stat., section 253.

It is consistent with justice, and in harmony with the presumed intention of the Legislature, to hold, as we do, that it was the purpose of this statute to afford the property owner, whether an artificial or a natural person, the opportunity of disposing of his or its own property by agreement, or of declining to do so before a taking against the owner's will by force of law. It is, indeed, implied in the very fact

that the law must ultimately be resorted to that it is taken without the owner's consent, but before resort is had to the law, the owner should be heard to decline or agree to part with the property by contract.

The decisions in the class of cases to which the case at bar and the one we are criticising belong, strikingly illustrate and enforce the rule we sanction, for it is universally held that, in favor of the property-owner, the construction is liberal, but strict as against the corporation that asserts a right to appropriate his property. "An act of this sort," said the court, in *Binney's Case*, 2 Bland's Ch. 99, " deserves no favor; to construe it liberally would be sinning against the rights of property." We are thus led to the conclusion that the court in *Swinney* v. *Fort Wayne, etc., R. R. Co., supra*, not only so construed the statute as to make it hostile to the general policy of the law, but that it also acted upon a wrong theory, since it construed the statute strictly against the property-owner, and liberally in favor of the person seeking to take his property from him.

We can not comment upon the numerous cases we have examined, but must be content with asserting that the general rule deducible from them is, that, whatever the form of the words employed, a direction that there shall be an effort to purchase the property or an effort to procure an agreement, the provision will be deemed mandatory, and that the appropriation proceedings will fail unless the statutory requirement is obeyed by making the proper effort before prosecuting proceedings to condemn. *Stone* v. *Commercial R. W. Co.*, 4 Mylne & C. 122; *Bowman* v. *Venice, etc., R. W. Co.*, 102 Ill. 459; *Chicago, etc., R. R. Co.* v. *Sanford*, 23 Mich. 418; *Cunningham* v. *Pacific Railroad*, 61 Mo. 33; *Hannibal, etc., R. R. Co.* v. *Muder*, 49 Mo. 165; *Matter of New York, etc., R. R. Co.*, 67 Barb. 426; Pierce R. R. 181, and cases cited in note; Lewis Eminent Domain, section 301, and authorities collected in notes 1 and 2.

We are constrained by the considerations we have ex-

pressed, and the authorities we have examined, to deny the authority of *Swinney* v. *Fort Wayne, etc., R. R. Co., supra,* upon the point we have discussed, and to acquiesce in the disapproval expressed in the case of *Terre Haute, etc., R. R. Co.* v. *Scott, supra.*

The instrument of appropriation is the foundation of the entire proceeding. If it be not a sound foundation no valid proceeding can be built upon it. A sufficient foundation it can not be, unless it states all facts essential to the right of the corporation to make the seizure. If it fails to do this, it does not state a case authorizing the court to proceed in the matter.

In *Church* v. *Grand Rapids, etc., R. R. Co.,* 70 Ind. 161, a case of the same general class to which the present belongs, it was held that the petition must state all facts essential to the right of the court to assume authority over the proceedings, and it was said that " objection may be taken as in ordinary adversary proceedings." The court said in another case of the same general nature (54 Ind. 121), that "Appellee did not charge, except inferentially, that appellant had taken any of his real estate," and this was held to be a fatal defect. It was also held in that case that a failure to give a correct description of the property taken, and to refer to the statute which authorized the taking of the land, were defects of such a nature as rendered the petition bad. We do not assert that these cases are directly in point, but we do assert that they bear strongly upon the general proposition, that in all cases the petition, or the instrument of appropriation, must contain all such facts as are requisite to the authority of the court to proceed in the matter. It is not to be forgotten that the case is not one dependent upon general statutes or general rules of law, but upon a statute affecting the rights of a class and prescribing particular rules of procedure. Proceedings under such statutes are not ordinary civil actions, but are statutory proceedings of a special na-

ture. *Anderson* v. *Caldwell*, 91 Ind. 451, and cases cited; *Toledo, etc., R. W. Co.* v. *Dunlap*, 47 Mich. 456.

These special proceedings may be in a general sense civil actions, but they are, nevertheless, proceedings of a peculiar nature and founded exclusively on a statute, for the right of eminent domain can only be exercised under a legislative enactment and in accordance with its provisions. Although, as to matters of practice and the like, the provisions of the civil code may be called to the aid of the special statute, the proceeding is not, in the strict sense, an ordinary civil action. As the proceeding is in its nature a special statutory one, it is incumbent on the party who takes the initiatory steps to make a case of which the court may rightfully assume jurisdiction. This must necessarily be so, for there is no inherent or general jurisdiction, but only the special and limited authority conferred by the statute. To call into exercise this limited and special jurisdiction, facts must be stated authorizing the court to take cognizance of the particular case, and where the question is presented by a direct attack the absence of these facts makes the instrument bad. It is generally held that the fact of inability to agree is a jurisdictional one, but our judgment is that it is a jurisdictional fact only in a qualified sense, for we believe that, as held in *Ney* v. *Swinney, supra*, the absence of the allegation that there was an effort to agree will not be sufficient cause for declaring the proceedings void in a collateral attack, although the objection, if seasonably and appropriately made, will be fatal in a direct proceeding.

We have many cases declaring that where there is some petition, although radically defective, or there is some notice, although insufficient, still, the court having passed upon the petition or notice, and adjudged that it possessed jurisdiction, that decision will make a collateral attack unavailing. *Mullikin* v. *City of Bloomington*, 72 Ind. 161; *Hume* v. *Conduitt*, 76 Ind. 598; *Ricketts* v. *Spraker*, 77 Ind. 371; *Hackett* v. *State*, 113 Ind. 532; *Kleyla* v. *Haskett*, 112 Ind. 515; *Adams*

Lake Shore and Michigan Southern R'y Co. *v.* C., W. and M. R'y Co.

v. *Harrington,* 114 Ind. 66. The rule, however, is different where the sufficiency of a notice or pleading is directly questioned, and here we are dealing with a pleading directly, seasonably and appropriately assailed, and it must, therefore, be held that if it is radically defective the attack should prevail.

Our ultimate conclusion is that, even if it be conceded that the authority exists to take longitudinally the appellant's right of way, still this appeal must be sustained because the instrument of appropriation does not sufficiently plead such facts as authorized the court to proceed in the matter, inasmuch as it does not positively aver that there was an effort to secure by agreement the rights demanded.

The construction given to the clause of section 3907 regarding the questions that may be tried on appeal, in *Swinney* v. *Fort Wayne, etc., R. R. Co., supra,* we accept as the true one, and we hold, as it was there held, that the clause must be construed to mean " questions subsequent to the establishment of the regularity of the appraisement." Our conclusion, somewhat differently expressed, is this : The petition, or instrument of appropriation, must, where the attack is a direct and not a collateral one, show the facts upon which the jurisdiction of the court to move in the case depends, and one of these facts is the effort of the corporation seeking title to acquire it by agreement. This fact, in its nature jurisdictional, must be directly averred, otherwise the instrument does not constitute a sufficient foundation for subsequent proceedings, and is bad as against an attack directly, seasonably and appropriately made.

Our conclusions necessarily lead to a reversal, irrespective of the question of the right of one railroad company to acquire part of the right of way of an existing corporation.

Judgment reversed.

MITCHELL, J., did not participate in the decision of this case.

Filed Dec. 19, 1888 ; petition for a rehearing overruled March 5, 1889.