# HEALD et al. v. STRONG.

## (138 N. W. 1114.)

**Appeal — statement of case — time for — extension.**

1. Trial courts possess a broad discretion in the matter of granting or refusing extensions of time for the purpose of enabling counsel to prepare and cause to be settled a statement of the case, and the exercise of such discretion will seldom be interfered with by this court, and never except in cases of a manifest abuse of such discretion. It is held, applying the above rule, that respondent's motion to strike the statement of the case from the record, based upon the alleged insufficiency of the showings made for the various extensions of time in which to have such statement settled, should be denied, it not appearing that, in granting such extensions, there was a clear abuse of discretion.

**Appeal — review of evidence — denial of new trial.**

2. Where a motion for a new trial based upon alleged insufficiency of the evidence is made and denied after judgment, and no appeal from the order is taken, this court, following the rule in Hedderich v. Hedderich, 18 N. D. 488, 123 N. W. 276, will not, on an appeal from the judgment, consider assignments based solely upon alleged insufficiency of the evidence.

**Appeal — error in rulings on evidence.**

3. Certain rulings in the admission and exclusion of testimony examined and *held* proper, or at least nonprejudicial.

### On rehearing.

**Appeal — sufficiency of evidence — how challenged at trial.**

4. On an appeal from a judgment alone, the question of the sufficiency of the evidence is not properly before the court for decision, although attempted to be raised by an assignment of error, where the sufficiency of such evidence was in no manner challenged at the trial, but only by a motion for a new trial made long after the entry of such judgment.

**Appeal — scope of review.**

5. Section 101 of the N. D. Constitution, which provides that "every point fairly arising upon the record of the case shall be considered and decided, and the reasons therefore concisely stated," etc., construed, and *held* not to require a literal compliance therewith. A point fairly arising upon the record, within the meaning of said section, must be one the decision of which is necessary to the final determination of the cause, and which is properly presented with a fullness and distinctness, rendering it possible for the court to comprehend it in all its bearings. Such is the well recognized and settled construction of like constitutional provisions.

Opinion filed October 4, 1912. On rehearing December 5, 1912.

Appeal by plaintiffs from a judgment of the District Court for Stuttsman County, *E. T. Burke,* J., in defendant's favor in an action on a promissory note.

Affirmed.

*T. F. McCue,* for appellants.

*Knauf & Knauf,* for respondent.

FISK, J. Defendant had judgment in the court below, and plaintiffs have appealed, both from such judgment and from an order denying their motion for a new trial. On motion of respondent the appeal from the order was dismissed upon the ground that the same was not taken within sixty days after the making and service of such order. Such order was made April 7, 1911, and a copy thereof served upon appellants' attorney on April 8th, and the appeal from such order is dated June 13th, and was served on June 15, 1911. The statute (§ 7204, Rev. Codes 1905) limits the time for taking an appeal from an order to sixty days from the time written notice of such order shall have been given to the party appealing. The appeal from such order was therefore ineffectual.

At the outset we are confronted with a practice questioned. At the date on which this cause was set for argument, respondent's counsel, on due notice theretofore given, made a motion in this court for an order striking the settled statement of the case from the record on the following ground:

"1. That the same was not settled within the time allowed by law.

2. That no just cause of action or reason existed for the extensions of time within which to prepare or settle the statement of the case.

3. That the appellants wilfully neglected to prepare the proposed statement of the case, or to settle the statement of the case within the time allowed by law.

4. That the extensions of time with in which to prepare or settle the statement of the case were improperly allowed, and that the extensions so granted were erroneous, because from the record it appears affirmatively that the failure to prepare or serve the statement of the case or have the same settled earlier was due to the wilful neglect of the said appellants."

The record discloses that the case was tried and judgment rendered in the month of June, 1910. The statement of the case was not settled until March 6, 1911. On August 31, 1910, appellants' counsel applied for, and received from the trial judge, an extension of sixty days from and after such date in which to settle a statement of the case. The showing offered as a basis for such order seems to have been sufficient and its sufficiency is not challenged.

Again, on October 25th, upon a similar showing, appellants' counsel applied for and received a further extension of such time of sixty days from and after such date.

Again, on December 5th, plaintiff presented an affidavit to the trial judge stating that he had just received an official transcript of the testimony from the court reporter, and also stating that the same is a large one and contains many exhibits, and that it will require a great length of time in which to prepare a proper statement of the case, whereupon an order was made extending the time for the period of ninety days from and after December 25th. Such order was filed on January 10, 1911, in the clerk's office.

Again, on the 24th day of February, 1911, another similar application was made for an extension of such time up to and including March 8, 1911, which was granted by the Honorable E. T. Burke, the trial judge, but who, in the month of January preceding, ceased to be the presiding judge in said judicial district and qualified as judge of this court. As a basis for such order appellants' attorney presented an affidavit stating, in substance, that immediately upon ascertaining the result of the verdict in said cause, he ordered a transcript of the evidence for the purpose of settling a statement of the case and of moving for a new trial; that on or about the 1st day of January, 1911, he received such transcript, which was the earliest date according to his best information and belief at which he could procure the same; that immediately thereafter he commenced the preparation of such statement, but that during a portion of such time his stenographer was called away on account of sickness, and that during a considerable portion of the time after the commencement of such work his family were seriously ill, which rendered it impossible for him to give his attention to such work, but that he had proceeded with due despatch and as rapidly as possible, completing the proposed statement on February 5, 1911,

on which date he served the same upon respondent's counsel, the latter accepting service thereof on February 6th. Thereafter, and on February 18, 1911, respondent's counsel served many amendments to such proposed statement, which required two days' time in which to examine and compare the original transcript therewith. He also stated that ten days' additional time was requisite in which to serve notice of an application to have such proposed statement settled. Thereupon an order was made by the said trial judge extending the time to March 8, 1911, in which to have such statement of the case settled.

Again, on March 8th, two days after such statement was settled, an application was made to the Honorable Charles F. Templeton, judge of the first judicial district, for an extension of such time to and including March 25th thereafter, which application was granted upon a showing substantially the same as that made to the Honorable E. T. Burke at the time the last extension was granted, and also setting forth the fact that at the time Judge Burke settled such statement on March 6th, objection was made upon the ground that no jurisdiction was vested in Judge Burke to grant such extension of time for the reason that he had at that time ceased to be the judge of the fifth judicial district, wherein such cause was tried, and a proper showing was also made that his successor, Judge Coffey, as judge of the fifth judicial district, was absent from the state.

At the time of the application for the settlement of the statement of the case, the following objection was made and overruled and an exception allowed, which objection was as follows:

"The defendant objects to the settlement of the statement of the case in the above entitled action, (1) because no proper extension of time has been granted by the judge of said court extending the time to or beyond March 6th, 1911, within which to prepare or settle such statement of the case; (2) no good cause in the interest or furtherance of justice has been shown under or by virtue of which the plaintiffs are entitled to the settlement of the statement of the case at this time, and no cause exists therefor; (3) that said statement of the case could readily have been settled long prior to tht 1st of January, 1911, by the use of reasonable diligence. These objections are based on the records and files and the annexed affidavits.

"Wherefore the defendant prays that the motion of plaintiffs to settle the statement of the case be herein dismissed.

"Dated March 6th, 1911."

In support of such objections the following affidavits were presented by respondent's counsel:

"John C. Lowe, being first duly sworn, deposes and says that he was, during all the year 1910, the official stenographer of the fifth judicial district, and as such stenographer caused the taking of the testimony of the witnesses in the above entitled matter, by Miss Getrude McConnell, affiant's assistant. That Hon. T. F. McCue was one of plaintiffs' attorneys in said action. That said McCue told affiant, soon after the trial of said action, that he would want a transcript of the testimony in said action, and asked what the same would cost; that affiant caused said McCue to be immediately notified of the cost thereof. Some weeks later affiant met said McCue and he (McCue) informed affiant that he had forgotten the amount, and that if affiant would again notify him thereof he would send a check therefor. That affiant immediately notified him again of the amount, but did not hear from said McCue again relative thereto. That said McCue was informed by affiant, and well knew that affiant required payment for transcripts to be made in advance, as provided by statute. That said McCue did not furnish the payment, but on November 5th we received a letter from A. W. Heald in which he stated that he had received a letter from Mr. McCue asking that $150 be sent to him to pay for this transcript, and Mr. Heald also said at that time (November 5th, 1910): 'I wish you to draw on us for the amount of this, and we will pay the draft.' On receipt of the letter, or soon thereafter, Miss McConnell commenced the transcript for the first time. On November 29th, 1910, we received another communication from Heald saying that McCue was no longer retained by them. We did not feel at liberty to write this transcript without having our fees in advance.

"That the only reason why said transcript was not prepared and sent plaintiffs or their attorney sooner was the failure of the plaintiffs to forward the money therefor in accordance with my rules, and § 484, Rev. Codes 1905.

"On November 5th, 1910, we wrote the plaintiffs the following letter:

"Replying to your letter of November 5th, will state that we require in all cases a deposit of the estimated cost before starting to write a transcript. Therefore, I have not started on the case of Heald & Kleinman v. Strong, but I think I can furnish you the transcript about the second week in December. As per your request, I am drawing on you to-day for the estimated cost of $150.

"John C. Lowe.

"Subscribed and sworn to before me this 22d day of February, 1911.

"Omon B. Herigstad,

(Seal.) "Notary Public.

"A. L. Knauf, being first duly sworn, deposes and says that a copy of the transcript of the evidence in the above entitled action was furnished affiant by the then court stenographer of said district on December 12th, 1910, and that the same could have been furnished affiant long prior to that date had the original thereof been ordered under the rules of said stenographer and the law of North Dakota relative to stenographers of the district court. That said action was tried and verdict rendered at the June, 1910, term of the district court of Stutsman county, North Dakota; that notice of entry of judgment was served on Hon. T. F. McCue, attorney for plaintiffs, on or about the 23d day of June, 1910. That at the same term of court, several days subsequent thereto, affiant tried a court case, McCurdy v. Williams et al., the same stenographer taking the testimony in said court case as took the testimony in the above entitled action; that no decision was rendered in the said court case until the last day of November, 1910; that affiant immediately ordered and secured a transcript of the testimony prior to December 12th, 1910, in such court case, and that such transcript contained at least seventy pages more of typewritten matter than that contained in the Heald and Kleinman v. Strong action. That, had the transcript been ordered and fees paid promptly by the

said plaintiffs, plaintiffs could have procured such transcript of testimony long prior to the 1st day of November, 1911.

"A. L. Knauf.

"Subscribed and sworn to before me this 4th day of March, 1911.

. "John Knauf."


No counter showing was made by appellants' counsel. On the foregoing facts we are called upon to decide the motion to strike such statement of the case from the record on this appeal.

While it appears from such showing that appellants' counsel did not proceed in the settlement of such statement with that degree of diligence which he could and perhaps should have proceeded with, still we are not prepared to say that the trial judge, as well as Judge Templeton, clearly abused the discretion vested in them in granting the various extensions of time. Trial judges rightfully possess a broad discretion in these matters, and the exercise thereof will seldom be interfered with by this court, and never except in cases of manifest abuse of such discretion. It does not appear that the delay was occasioned through bad faith or with any intent to gain an advantage over or to injure the respondent in any way, and in the light of the prior holdings of this court in such cases, we have concluded that the motion should be denied.

This brings us to the merits. Appellant has assigned thirty-one alleged errors, but in view of the rule announced in Hedderich v. Hedderich, 18 N. D. 488, 123 N. W. 276, and cases therein cited, those assignments based upon alleged insufficiency of the evidence cannot be considered on this appeal, as these same matters were urged and passed upon on the motion for a new trial made after the entry of the judgment, and the order denying such motion, not having been appealed from, is, as to such objections, *res judicata.*

Assignments numbered 1 to 7 inclusive, and also all others not predicated upon alleged errors of law occurring at the trial, must be disregarded.

Before noticing the alleged errors of law complained of, a brief statement of the facts is deemed advisable. It is alleged in the complaint that on March 3, 1909, plaintiffs purchased certain land of defendant and the latter took a stock of goods in exchange therefor, and

that, as part payment for the stock of goods, defendant sold and de livered to plaintiffs a promissory note for $1,422 executed by one Christianson and secured by a chattel mortgage covering an undivided one half of the crops to be raised during 1909 on certain described land. Plaintiffs first cause of action is predicated upon an alleged false and fraudulent representation by defendant that such chattel mortgage constituted the first and only lien upon such crops, whereas defendant in fact held a prior lien thereon by virtue of a lease or cropping contract between himself and Christianson, and that such prior lien rendered plaintiffs' security under such mortgage wholly worthless. They allege the insolvency of C., and that the note is and was of no value, but that it would have been worth its full face value had it been secured as represented by defendant. The answer puts in issue such alleged representations, and it is therein alleged that plaintiffs were fully informed of the existence of such prior lien held by him.

For a second cause of action plaintiffs allege that as to one quarter of the land sold by defendant to them there were 13 acres less than had been represented, and that, at the agreed price paid for such land of $30 per acre, plaintiffs paid to defendant and he received from them the sum of $390 more than he was entitled to receive. This is also put in issue by the answer.

By way of counterclaim defendant alleged that the stock of goods transferred to him by plaintiffs for such lands, note, and other consideration was, by plaintiffs, represented and warranted to be in a strictly first-class and salable condition, and that such goods were all of like kind and quality as certain boxes of new goods then in Minneapolis, and which were exhibited to him by plaintiffs. That fully relying on such representations and warranty, he was induced to enter into such deal. Then follow allegations of a breach of such representations and warranty and of plaintiffs' knowledge thereof and of resulting damages. These allegations were put in issue by a reply to such counterclaim.

Such were the issues submitted to the jury at the trial, and said jury returned a verdict in defendant's favor for the sum of $1,000. The court's instructions to the jury are not before us and they are in no way challenged. The only assignments of error to be noticed are there-

fore those relating to certain rulings admitting and excluding testimony.

We will proceed now to a consideration of such of these assignments as are discussed in appellants' brief.

By the 8th assignment appellants complain of the ruling permitting defendant to testify to the effect that he told the plaintiff Heald, at the time the deal was made, that the chattel mortgage securing the note for $1,422 was subject to the provisions of the rental contract between him and Christianson relative to a lien on Christianson's interest in the crops for advancements. At least two answers to such contention may be made. In the first place, the same matters embraced in the questions and answers objected to were, immediately prior to asking such questions, fully covered by defendant without objection. Hence, if error at all, such rulings were nonprejudicial. Second, we are clear that such rulings were proper, as such testimony did not in any way tend to vary the terms of a written contract as contended for by appellants. Counsel for appellants criticizes the holding of this court in McFadden v. Thorpe Elevator Co. 18 N. D. 93, 118 N. W. 242, and also attempts to differentiate the case at bar from that decision. We see no reason, however, to depart from the views there expressed, nor do we concur in the contention that the rule there adopted is not applicable here. Indeed, it would be strange if defendant could be precluded from showing the actual contract which these parties entered into, when concededly such contract rested in parol. If, as between the original parties to this mortgage, it was understood and agreed that it should be held subject to the security clause in the cropping contract covering advancements, certainly it was competent for defendant by express agreement with Heald, to assign the same on condition that he should hold it in exactly the same way, and such is the purport of the testimony complained of. We find no error in such ruling.

The remaining assignments which are in any manner discussed in the briefs all relate to rulings on the admission or exclusion of testimony introduced to establish defendant's counterclaim, such testimony all relating to the question of the damages sought to be recovered under such counterclaim. To some extent these assignments have a close relation to those involving the sufficiency of the evidence, and they are, as stated by counsel, treated in appellants' brief only in a general way.

In view of this, we feel justified in disposing of them in a like manner in this opinion. While the method pursued by defendant's counsel in proving such damages was perhaps not technically correct in every particular, we are satisfied that the testimony as a whole afforded a sufficient legal basis for the jury's assessment of damages, and that to the extent, if any, that such rulings constituted error, such error was nonprejudicial to the substantial rights of appellants, and we are convinced from the entire record that substantial justice was meted out to these parties in the district court. Entertaining these views it follows that the judgment must be, and accordingly it is, hereby affirmed.

BURKE, J., being disqualified, did not participate.

## On Petition for Rehearing.

FISK, J. Counsel for appellants has filed a petition for a rehearing in the above cause. It presents nothing new, and it fails to convince us that our former views are incorrect. Ordinarily, under these circumstances, we deem it an unnecessary waste of time in disposing of like petitions, to add anything to the opinion as first announced. However, owing to certain statements in the petition, we deem a brief reply to the first two contentions advisable.

Counsel first challenges the correctness of the decision dismissing the appeal from the order denying his motion for a new trial. Among other things, he says: "There was no evidence in the record before this court that the order overruling plaintiff's motion for a new trial had been filed in the district court sixty days previous to the appeal, . . . and we rise to inquire how this court could conclude that the sixty days in which the right of an appeal from an order is granted had expired when the appeal was made in this case. The dismissal of the appeal from the order overruling the motion for a new trial was evidently inadvertently made, and it was not based upon any of the records in the case and was unwarranted." Such a bald statement cannot be permitted to go unchallenged in the light of the record before us. Counsel is entirely mistaken as to what the record discloses. The original order denying his motion is before us, and unmistakably shows that it was filed with the clerk of the district court on April 11th,

24 N. D.—9.

and the appeal not having been taken until June 15th, it was clearly too late.

Counsel's second contention in substance and effect is that, although the sufficiency of the evidence to support the judgment was in no manner challenged at the trial, that, nevertheless, on an appeal from the judgment, he may urge such insufficiency as an *error of law* occurring at the trial. An answer to such contention ought not to be necessary, as the practice is so firmly settled to the contrary. It is, of course, true, as held by this court in Satterlee v. Modern Brotherhood, 15 N. D. 92, 106 N. W. 561, that where the sufficiency of the evidence is challenged at the trial by a motion for a directed verdict, such ruling may be reviewed as an error of law in an appeal from the judgment. In that case both parties moved for a directed verdict at the close of the testimony, and prior to the entry of judgment a motion was made for judgment notwithstanding the verdict, and these rulings were very properly held reviewable on an appeal from the judgment, and that a motion for a new trial was not a condition precedent to the right to such review. A very different case is presented, however, in the case at bar. The sufficiency of the evidence was in no manner challenged at the trial. Counsel concedes in his petition that the decision of matters presented for the first time on a motion for a new trial made after judgment is final in the absence of an appeal from the order denying such motion. In other words, that, as to such matters, the order denying the new trial is *res judicata.* Yet this is all we held on such point in the foregoing opinion, and it is also the holding in the case of Hedderick v. Hedderick, 18 N. D. 488, 123 N. W. 276. Counsel seems to be laboring under the idea that because he has assigned, or attempted to assign, error predicated upon the alleged insufficiency of the evidence when the sufficiency was in no way challenged or ruled upon at the trial, there is a constitutional duty resting upon us to decide the question thus sought to be raised. It is, of course, entirely clear that such an alleged assignment is no assignment at all, for it in no manner challenges the correctness of any ruling in the court below. The question of the sufficiency of the evidence is therefore not before us on this appeal from the judgment, as manifestly such appeal does not bring before us the question of the correctness of an order denying a motion for a new trial made long after the entry of such judgment.

It is, of course, entirely different, as held in Satterlee v. Modern Brother-hood, supra, regarding rulings made at the trial and duly challenged. These are brought before us on an appeal from the judgment, although the same alleged errors were subsequently urged and passed upon as grounds for a new trial. This, we believe, fully answers counsel's contention, and we would stop here were it not for the persistent and un-warranted accusations of counsel that this court has violated or evaded § 101 of the Constitution by not passing upon the sufficiency of the evidence. Several pages of the petition are devoted to a discussion of this constitutional mandate, and to the duty of this court to observe it. All through such discussion counsel begs the question by assuming what, as we have seen, is not true, that the question of the sufficiency of the evidence fairly arises on the record. It is not an infrequent occurrence for other members of the bar to make like criticisms in their petitions for rehearings without the least justification therefor, clearly evincing a mistaken idea as to the proper and well-settled construction of this provision of our Constitution. In view of this, and for the information of such members of the bar, we embrace this occasion to express our understanding of said section. In order for a question to fairly arise on the record (in cases not triable *de novo*), it must, of course, not only in fact exist in the record, but it must be properly assigned as error. But this is not all, for it is not by any means true that every question thus assigned fairly arises on the record. If its decision is not *necessary* to a final and complete determination of the rights of the litigants, it cannot be properly said to fairly arise on the record, within the meaning of such constitutional mandate. It is absurd to impute to the framers of the Constitution an intent to require of the courts a decision of every point raised, regardless of whether a decision of other and controlling points in legal effect puts an end to the litigation. It would not only force upon the court needless labor, but it would be an unwise and dangerous practice, as it would inevitably result in laying down hastily prepared precedents on points naturally not as carefully considered as those which are necessarily controlling and decisive of the appeal. In view of this, it is well settled that, when necessary and controlling points are decided, the other questions cease to fairly arise on the record.

A like constitutional provision was construed many years ago by

the supreme court of Indiana, and such construction has been adhered to ever since. See Willets v. Ridgway, 9 Ind. 367. We quote therefrom as follows: "It is true that the Constitution, by an unwise provision, requires that this court shall give a written opinion upon every point arising in the record of every case,—a provision which, if literally followed, tends to fill our Reports with repetitions of decisions upon settled, as well as frivolous, points, and often to introduce into them, in the great press of business, premature, and not well considered opinions, upon points only slightly argued; yet it is a provision not to be disregarded, though merely directory, like that requiring the legislature to use good *English*. But though the provision is not to be disregarded, it is to be observed according to some construction, and should receive such a one as to obviate its inconvenience and objectionable character, as far as consistently can be done.

"It often happens that a point is raised involving an important principle, but of minor consequence in its bearing upon the particular case, while it presents the material question in some other pending cause. Now, to decide it in the case where, from its subordinate position, it is but carelessly argued, by one side or the other, if at all, and hence, perhaps, but hastily considered by the court, is unjust to counsel whose subsequently pending cause is thus prejudged, without their being heard, and upon an argument, on which they would be unwilling to rest it. It is this class of decisions which forms the bane of judicial reports.

"These, and other considerations, have led the court to inquire, When does a question, in the sense of the Constitution, arise in the record?

"We do not think it does so merely because it is raised by counsel, nor because it is presented in the assignment of errors. Nor, necessarily, because it is raised in a bill of exceptions. It must be a question, the decision of which is necessary to the final determination of the cause; and which the record presents with a fullness and distinctness rendering it possible for the court to comprehend it in all its bearings.

"Hence, it has been the frequent practice of the court in cases where a single point would put an end to a case, to decide that point, and no other.

"So, where a cause was necessarily reversed for one or more errors,

and remanded for a new trial, which might be upon new issues formed by amended pleadings, and with more or less evidence, points which were made upon the first trial, but might not arise upon the record, or were not so distinctly and satisfactorily presented by the record as they might be after another trial, have been considered as not necessarily and properly arising in the record, and have been passed. See Ferguson v. Harrison, 7 Ind. 610; Newell v. Gatling, 7 Ind. 147; Rogers v. Stevens, 8 Ind. 464; Clark v. Trovinger, 8 Ind. 335; Postlethwaite v. Payne, 8 Ind. 104; Mason v. Smith, 8 Ind. 73; Maxwell v. Collins, 8 Ind. 40; Henry v. State Bank, 3 Ind. 221."

For later Indiana authorities on this point, see Trayser v. Indiana Asbury University, 39 Ind. 556, and Lake Shore & M. S. R. Co. v. Cincinnati, W. & M. R. Co. 116 Ind. 578, 19 N. E. 440. From p. 590 of the latter opinion we quote the following: "The gravity and importance of the question is such that we have concluded that it should only be decided in a case where it is indispensably necessary to a proper and adequate judgment. We do not, as we have indicated, believe this is such a case, for we think that our decision upon a point which precedes the one mentioned fully and properly disposes of this appeal. We believe our duty is done when we fully meet and decide a question which leads to a reversal without investigating and deciding questions which lie beyond. Where a material question first in point of priority is decided, all the questions that the record legitimately brings to us are disposed of within the meaning of § 5 of article 7 of our Constitution. That provision cannot mean that in cases of reversal every point must be decided, even though some one of them completely disposes of the case; nor does it mean that the court must write upon all questions, but that it must write on such only as are decided. This court has uniformly acted upon the rule that where there is a judgment of reversal, it will not consider all of the qestions urged or presented, except in cases where it is clear that they will arise on a new trial, and even then the questions are not decided because it is the duty of the court to decide them, but because it is best to do so as a matter of expediency. We doubt whether a single volume of our Reports can be found, from the time our Constitution went into effect until the present, which does not contain cases in which this rule was acted upon by the court. Questions which come after a pivotal one that controls

the case, and the decision of which completely disposes of the appeal, cannot, as a general rule, be accurately said to be presented by the record in cases of reversal, although there may be, and perhaps are, exceptional cases. If it. were otherwise, the court might often and often be required to go far beyond the decision of a question which disposes, adequately and properly, of a pending appeal, and we think it evident that only such questions as must be decided, in order to justly and completely dispose of the case before the court, can be said to be 'questions arising in the record,' and questions upon which the court must write. If, to sum up in a short way, the court decides all the questions essential to a full and effectual disposition of the case at its bar, and writes on those questions, it has done its full duty under the Constitution." See also 15 Enc. Pl. & Pr. pages 306 and 307 and cases cited.

Ever since this court was organized it has recognized and adhered to a construction of § 101 in accordance with the above holdings.

The petition for a rehearing is denied.