Lily Parsons Reighley, Appellee, v. Continental Illinois
National Bank and Trust Company of Chicago,
Trustee. Reginald B. Parsons, Appellant.

Gen. No. 42,308.

Opinion filed May 19, 1944. Supplemental opinion filed June 30, 1944.

HETH, LISTER & FLYNN, of Chicago, for appellant.

THEODORE M. STUART and WINSTON, STRAWN & SHAW, of Chicago, ·for appellee; JAMES H. CARTWRIGHT and GEORGE B. CHRISTENSEN, both of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.
This is an action to enforce a written instrument made in America pursuant to a written contract between plaintiff and Parsons made in Berlin, Germany, prior to the annulment of their marriage. The decree was in plaintiff's favor and ordered dismissal of Parsons' counterclaim which sought, on the ground of invalidity of the Berlin contract, the return of the securities deposited by him with the Bank under the American agreement.

Plaintiff was born of a German father and English mother in England in 1912 and, when six years old, was taken to Berlin, by her parents, where she lived until her marriage to Parsons. Defendant was born in Seattle, Washington in 1906, and he inherited great wealth. In 1928, while still in college, he married Geneva Dahljehn who divorced him in Latvia in May 1934 and to whom he pays $1,000 per month for life under a divorce property settlement agreement, which also pledges him to pay $500 per month to the child of their marriage. In the fall of 1933 in Berlin, Germany, while in company of Geneva and while their marriage was in process of dissolution, Parsons met plaintiff, then a clothes model. After a rather constant courtship and while still married to Geneva, he proposed to plaintiff ''before he knew it'' and their engagement followed. They were married in Berlin in August 1935, made their home in Seattle and the marriage was annulled, by her action, in a decree of a Berlin court, effective August 20, 1936. The Berlin contract, in which he agreed to pay her $1,000 per month for life, was executed before her action was begun. The American agreement followed in October 1936.

The complaint recited the Berlin contract, in contemplation of the annulment, and its terms; the annulment decree in Berlin; the execution and terms of the American instrument; performance thereunder by Parsons; payments to plaintiff by the Bank until Parsons notified it to cease paying; and her demand for resumption of payments; and the Bank's refusal. In answer Parsons charged that the Berlin contract was void for want of consideration; that the annulment and the agreements were the result of a fraudulent scheme designed and carried out by plaintiff; that the Berlin contract, made to facilitate the annulment, was void as against German and American public policy; that it was made under mutual mistake of the parties that Parsons had a duty to support plaintiff after the

annulment; and that it was shocking and inequitable, since there was no intercourse during the marriage and plaintiff emerged therefrom physically the same, having had luxury lavished on her and had later married the man whom she had loved before marrying Parsons. The parties alternately made issue on these various allegations which presented questions of fact, law and fact, and law. The decree resolved the several issues in favor of the plaintiff; dismissed Parsons' counterclaim for want of equity; held both agreements valid and enforceable and decided the American instrument was an executed trust agreement; and ordered the Bank to carry out the terms of the trust.

It is argued that Parsons, highly impressionable, physically and mentally weak, was defrauded into the marriage by plaintiff who, according to design, spurned his ardent love, and by her corresponding influence and trust, and her threats to disclose his physical deficiency, forced him into the Berlin contract. The trial court said that, if that was plaintiff's design, it was ''probably the most leisurely scheme to defraud in the books.'' There are conflicts in the testimony on these issues with Parsons having the burden of proving the affirmative defenses. There is evidence that Parsons' business manager Brehme introduced the parties, and encouraged plaintiff to keep Parsons company so as to help him out of his depression over the breakup of his marriage with Geneva; that Parsons loved plaintiff from the start, while her first emotion was pity which gave way to love; that she accepted his proposal conditionally and Parsons went to Switzerland, where his mother and sister approved the engagement; that Attorney Bayley, employed by Parsons' father to represent the son in Geneva's divorce, spoke favorably to Parsons about plaintiff; that the conditions attached to acceptance of Parsons' proposal by plaintiff were that he should return to America and show her his ability to work and manage his

affairs and get rid of Brehme, and that she delayed the marriage more than 18 months; that Parsons after Geneva's divorce returned to America in June 1934 and his correspondence kept plaintiff advised of his business affairs and particularly of his own work, and he warned her against seeing Brehme in Europe. The correspondence corroborates plaintiff's testimony of the reasons for delaying the marriage and seems to support her testimony that Brehme's objection to the marriage was not altogether in the interest of Parsons. She testified that Brehme had resented her engagement because he wished her to be his mistress. There is nothing in the record to show that anyone except Brehme objected to the marriage during the more than 18 months' engagement, although Bayley said, and plaintiff denies, he warned her, when he first met her in Berlin, of Parsons' sexual incapacity. Plaintiff and defendant were married in Berlin in August 1935, after which they lived in Seattle, Washington, where apparently plaintiff was well received by his family and friends and, according to friendly letters by Parsons' secretary, even after the annulment Parsons' mother hoped that plaintiff would remarry him. Parsons, himself, more than a year after the annulment acknowledged that she had helped him, and the record indicates that she had. We see no reason to disturb the trial court's conclusion of this issue.

Parsons argues that plaintiff was in love with Reichenheim, whom she met in the Spring of 1935. It is true that he was a frequent companion of Parsons and plaintiff and was consulted by her about the Berlin lawyer. The question of her good faith in the annulment, however, must rest upon the truth of the grounds therefor. If Parsons was impotent, we cannot say that plaintiff did not have a right to dissolve or annul the marriage, regardless of her future plans or desires depending on the right. The record shows she married Reichenheim in August 1938 and Parsons remarried

in November 1938. Before she married Reichenheim she knew of Parsons' intention to marry his present wife. It is argued that she was cold, calculating and designing. The same answer may be given here. If she had grounds for annulment it can hardly be said she could not exercise her right upon them, regardless of what her character or motive might be. It is not denied that during their marriage of about one year, defendant, though he attempted frequently, was unable to consummate the marriage. His desire being frustrated on each occasion by the culmination of his excitement before the act was begun, and testimony being that she was ready on several occasions, any coldness or lack of co-operation on her part could hardly be responsible. He admits telling plaintiff in London in the Summer of 1936, when she inquired what was wrong with him, that an operation upon him when a boy, rendered him incapable of consummating the marriage. This admission lends credence to her story that until this occasion he had asked her to be patient. It is admitted that when 12 years old he underwent an operation involving a testicle. Following the London incident he was examined twice by Berlin doctors and after the annulment he was examined and treated by two American doctors, neither of whom testified in his behalf. In addition, he testified, in the annulment proceeding as to his incapacity. There are inferences from the testimony that his sexual life with Geneva was not happy and a finding in the annulment decree that he seldom had intercourse with her, while there is also the evidence of the children of his first and third marriages. In itself, his life with Geneva or with his present wife is not determinative of his capacity during his life with plaintiff. There can be no question in this record of his inability to have intercourse with plaintiff, perhaps because of combined physical and psychological reasons. It is not denied she had grounds for the Berlin annulment. These con-

siderations dispose of defendant's complaint about the decretal finding that the contract was not made to facilitate the annulment.

The record shows that Parsons was represented in Berlin by counsel of his own choosing and participated in negotiations. He submitted to physical examinations, testified at the annulment hearing and was represented by competent American counsel in the drafting of the subsequent instrument. We consider the court's finding that Parsons was fully and fairly represented and advised, is amply supported by the record.

Parsons contends there was no consideration for the Berlin contract. Plaintiff argues, and the court found, that the consideration was a settlement compromise, either of plaintiff's valid rights, or rights not clearly without foundation and which might have been litigated in Germany. All aspects of this issue were contested vigorously and exhaustively in the trial court and here, but we think the central point is well stated in the court's finding. The right which the court referred to would arise, if at all, out of Section 1345 of the German Civil Code. The construction and enforcement of both instruments, by the terms of the Berlin contract, are governed by the law of Illinois, but the question of consideration involved in those determinations can be answered only by reference to the German law. If plaintiff relinquished a right to support, or if she and Parsons compromised what was considered a doubtful right to support, there was good consideration for the contract. *Mulholland v. Bartlett*, 74 Ill. 58; *Good v. Krause*, 215 Ill. App. 333; *Williams v. Estate of Frederick*, 289 Ill. App. 410; and *Dougherty v. Duckels*, 303 Ill. 490. Under the German Introductory Act, Article XIII, the marriage and consequences thereof, between a German and an American, are determined for the former by German law and for the latter by laws of his State. The annulment was

granted under Section 1333 of the German Civil Code. Under Section 1345, plaintiff had a right after the annulment to demand treatment as a divorcee, whose husband alone was at fault, with respect to support, provided that Parsons knew and she did not, that the marriage was void when contracted. Under Section 1578 a husband alone at fault, shall "accord to the divorced wife" fitting support. The parties when the Berlin contract was made, knew that cause existed for annulment and that, in the event of annulment, plaintiff could, in a subsequent proceeding, assert her right under Section 1345 to the support provided in Section 1578. Parsons could have refused to enter into the contract and, in defense of any claim by plaintiff under Section 1345, deny that plaintiff was German, that he knew of the nullity of the marriage when performed, that she was ignorant of the nullity; and contend that under the German Introductory Act, he was entitled to have his obligations determined according to the law of the State of Washington. There is no statute in Washington providing support in annulment cases, and the argument of the parties on the question whether the right to be treated as a divorcee under Section 1345 would aid plaintiff under Washington law, is not relevant. The annulment decree made findings favorable to plaintiff on the factors of the nullity of the marriage, and found that she was a German when married and "Stateless" at the time of annulment. According to the German law experts, who testified almost contradictorily on almost all their interpretations, she would have had to establish the facts anew in any proceeding for support. The trial court found that on the basis of the testimony, she could probably have established the facts. We need not inquire whether plaintiff would have been successful in a subsequent proceeding under section 1345. *Dougherty v. Duckels,* 303 Ill. 490. We agree with the trial court that at least, plaintiff's claim for support

in Germany under that law was not without foundation. Consideration for the Berlin contract was, accordingly, sufficient. This conclusion disposes of the complaints against the findings that the contract was neither inequitable nor shocking.

It is claimed that the parties made the agreement under a mutual mistake of fact arising out of the mutual belief that plaintiff was to obtain a divorce and that Parsons was under duty to support her. Each party was represented by two lawyers in Berlin and, while the parties themselves discussed the financial terms in the light of Geneva's contract, after the cause for the action was determined, and both referred to the action before and after the decree as a divorce, the agreement was the result of negotiations between the lawyers and parties. It recites the use of an interpreter. It refers variously to the action as a "divorce suit," "cancellation of the marriage," "declaring the marriage void" and "dissolution of the marriage." Plaintiff's proceeding and the decree entered were for annulment and in the American instrument drawn by Parsons' attorney, in the absence of plaintiff, the proceeding was referred to as "an annulment." Under these circumstances, even though the parties themselves may have called the proceeding a divorce, we cannot say that either they or their attorneys were mistaken about the principles or goal of the negotiations. The finding against mutual mistake is correct.

The American instrument was made to carry out the terms of the Berlin contract, providing monthly payments for life to plaintiff of $1,000. Under German law support to a divorcee would cease upon remarriage but Parsons is bound by his contract. It is true that plaintiff's present husband will probably enjoy the fruits of any payment made under the instrument, as Geneva's European husband is probably enjoying her like payments. The Berlin contract required deposit by Parsons with the defendant Bank of security

sufficiently great to produce the monthly payment. Under an alternative provision, Parsons was required to give the Bank irrevocable instructions to remit the payments to plaintiff, and to empower the Bank, in the event of deficiency of income, to sell such securities as become necessary to provide the payments and suspend Parsons' right of disposal from the deposit, except when the obligation under the Berlin contract ceased or when there was excess income and except to substitute securities with plaintiff's consent. Parsons performed under the American instrument simultaneously with its making and in all respects performed the obligations of the Berlin contract. He now claims that the American instrument was but a pledge to secure the payment to plaintiff, but the trial court held with plaintiff that the instrument was a trust agreement which became executed when Parsons performed the obligations and which created a fund out of which the payments were made. Because we have concluded that Parsons is bound by the Berlin contract, we need not decide the point. Since no reason has been shown why the Bank should not perform under the American instrument, we believe the decree compelling the Bank to perform was proper and it is hereby affirmed.

*Affirmed.*

HEBEL, P. J., and BURKE, J., concur.

SUPPLEMENTAL OPINION ON REHEARING.

Defendant Parsons has filed a petition for a rehearing, asking that we review the finding of the trial court that the Escrow Security Pledge Agreement is an executed trust and not a pledge as Parsons contends. We held that, having decided Parsons is bound by the Berlin contract, we need not decide the further question. Parsons says, "This leaves the finding of the trial court to the effect that it is a trust in full force and effect between the parties." No case is cited by

him in support of that contention, though we find *Russell v. Russell*, 134· Fed. 840; *People v. Skidmore*, 27 Cal. 287; *Finch v. Hollinger*, 46 Iowa 216; *Hall v. City of Kalamazoo*, 141 Mich. 503; *Spitzley v. Garrison*, 208 Mich. 50; *Stuart & Palmer v. Heiskell's Trustee*, 86 Va. 191; and *Ford v. Ford*, 88 Wis. 122 are cited under section 1190 and 1336, 34 C. J. (Judgments) as support thereof. He admits the finding of the trial court on this question "was not necessary to plaintiff's right to recover if the support agreement was founded on a valid consideration." We follow the uniform rule (*Moran Towing & Transportation Co. v. Navigazione Libera Triestina*, 92 F. 2d 37; *State v. Missouri Public Service Corp.* (Mo.), 174 S. W. 2d 871; *Cambria v. Jeffery*, 307 Mass. 49; *Karameros v. Luther*, 279 N. Y. 87; and *Schofield v. Rideout*, 233 Wis. 550), that our failure to pass upon the trial court's finding as unnecessary to our decision, does not leave that finding *res judicata* between the parties.

*Russell v. Russell* in the first group of cases mentioned, was referred to but not followed by a distinguished court in the *Moran Towing case*. The Michigan cases are not inconsistent with what we believe to be the general rule. If the Wisconsin case may be construed to be contrary to the general rule, it is not in accord with the very recent *Schofield case* cited above, which supports the rule. The *Iowa case* is, we believe, distinguishable. We do not agree with the California and Virginia decisions in so far as they conflict with the general rule.

We, therefore, adhere to our former decision.

*Judgment affirmed.*

BURKE, P. J., concurs.

LUPE, J., took no part.