Randolph and Ileene NODLAND,
Plaintiffs and Appellants,

v.

The NOKOTA COMPANY, formerly
known as Star Drilling, Inc., a North
Dakota Corporation, Defendant and Appellee.

Civ. No. 10012.

Supreme Court of North Dakota.

Dec. 30, 1981.

Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for plaintiffs and appellants; argued by Irvin B. Nodland, Bismarck.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant and appellee; argued by John L. Sherman, Dickinson.

SAND, Justice.

This is an appeal by the plaintiffs, Randolph Nodland and Ileene Nodland [the Nodlands], from a summary judgment dismissing their complaint against the defend-

ant, The Nokota Company [Nokota] on the grounds that the subject matter was res judicata.

Many of the facts relative to this appeal are set forth in the case of *Nodland v. Plainsmen Petroleum, Inc.*, 265 N.W.2d 252 (N.D.1978), which involved an action by the Nodlands to rescind a lease by which the Nodlands conveyed to Plainsmen Petroleum, Inc., [Plainsmen] a leasehold interest in the coal reserves underlying certain lands owned by the Nodlands in Dunn County, North Dakota. The underlying action from which that appeal was taken was commenced by the Nodlands in 1975 against Plainsmen, Natural Gas Pipeline Co. of America [NGP], and Nokota (formerly Star Drilling)[1], as defendants, for rescission of a coal lease dated 6 Oct 1971 executed by the Nodlands to Plainsmen.

On 6 Oct 1971 the Nodlands and Plainsmen executed a coal lease whereby the Nodlands leased certain coal interests in their land to Plainsmen. The lease provided that if the Nodlands did not own the coal interest under their land, they would receive two cents per ton for any coal mined; and if they did own the coal, they would receive ten cents per ton for any coal mined. The question of ownership centered on whether or not a mineral reservation by a previous owner also reserved coal interest. However, at the time the lease was executed the Nodlands apparently were under the impression they owned the coal interests.

On 1 Feb 1973 Plainsmen assigned all its interest in the Nodland lease to Star Drilling (Nokota). On 25 Jan 1973 Star Drilling and NGP executed a document entitled "Coal Agreement for Coal Leases in Dunn County, North Dakota," wherein NGP acquired certain rights in the Nodland lease from Star Drilling.[2] This document also gave NGP an option to purchase from Star all of Star's coal leases which were the subject matter of the agreement. On 28 Dec 1976 NGP notified Nokota of its intention to exercise its option as of that date. Pursuant to the "Coal Agreement for Coal Leases in Dunn County, North Dakota" Star [Nokota] retained certain royalty rights on all merchantable coal mined by NGP.

On 17 Dec 1974 the Nodlands were advised that this Court, in *Christman v. Emineth*, 212 N.W.2d 543 (N.D.1973), had declared that a reservation of mineral rights also reserved coal rights.

The Nodlands executed a notice of rescission on 31 July 1975 and commenced an action against Nokota, Plainsmen, and NGP to rescind the lease.

Nodlands' amended complaint, dated 5 May 1976, alleged in substance that on 6 Oct 1971 the Nodlands and Plainsmen, through its agent, Charles W. Skjod, executed a coal lease for certain lands owned by the Nodlands; that at all times during the negotiations the Nodlands and the defendants believed that the Nodlands owned the coal under the land; that the Nodlands signed the coal lease based upon the fact that they believed they owned the coal interests under their land and that they would receive ten cents per ton for all coal mined on their land; that the Nodlands did not own the coal under their land as had been represented to them by Skjod; that but for the mutual mistake of law and fact, misrepresentation, and fraud the lease would not have been executed; and that the Nodlands were entitled to rescission. The Nodlands further alleged the NGP was a necessary party to the action because of its alleged interest in the lease; that the Nodlands' right to rescission had priority over NGP's interest; and that NGP's interest was subject to the defenses and rights of the Nodlands.

The apparent discrepancy between the date on which Star acquired the leasehold and the date when it gave an option to NGP has not been argued as supporting Nodland's position.

1. In our previous opinion we noted that the successor to Star Drilling, Inc., is now known as The Nokota Company.

2. In our previous opinion we noted in footnote 2 that:

The action was tried before the court without a jury and a decision ordering the rescission of the coal lease was rendered. The district court concluded that the rescission was timely, that both mistake of fact and of law existed, and that NGP was bound by the mistake. The named defendants, Plainsmen, NGP and Nokota appealed to this Court and raised the following issues:

(1) The Nodlands failed to timely rescind the coal lease;

(2) The trial court erred in its findings and conclusions determining that there was a mistake of fact or a mistake of law constituting grounds for rescission; and

(3) The defendant NGP was a good faith purchaser for value who took free of the claims of rescission of Nodlands.

In the previous case the appellant's brief also stated:

"As previously mentioned, the issues are in the alternative, and thus a different answer than given by the Trial Court to any one of them requires a reversal of the Trial Court decision and dismissal of Plaintiff's Complaint."

This Court reversed the trial court and in so doing made the following statement:

"Though Nokota, Star, Plainsmen and NGP question no specific finding of fact, they question the findings of fact generally, and assert that the trial court committed several errors in the legal conclusions which it drew from the facts. We reach but one of the alleged errors."

We held that NGP was a good faith purchaser for value of the disputed leasehold because NGP's exercise of the option to purchase the leases related back to the execution of the option and at that time NGP had no notice, either actual or constructive, of the Nodlands' claim. Therefore the Nodlands were not entitled to the remedy of rescission as to the defendant NGP. After our reversal, the district court entered judgment wherein its earlier judgment was in all things reversed, discharged, and vacated.

On 1 February 1980 NAERCO, Inc., a subsidiary of NGP assigned the coal lease back to Nokota. The Nodlands then commenced the instant action on 5 Dec 1980 and alleged in substance that the assignment of the lease by NAERCO, Inc., to Nokota reinstated the original district court judgment which had rescinded the Nodlands' lease as to Plainsmen and Nokota. The Nodlands further alleged that the interests acquired by Nokota from NAERCO, Inc., were null and void by reason of the earlier district court judgment. The Nodlands' prayer for relief asked that all of Nokota's claims to the Nodlands' property be declared null and void. Nodland moved for summary judgment and Nokota resisted the motion and asserted it was entitled to summary judgment on the grounds of res judicata. Following a hearing on the motions, the district court entered judgment dismissing the Nodlands' complaint on the basis that the subject matter was res judicata, and they appealed to this Court.

The primary issue raised by the Nodlands concerns whether or not the doctrine of res judicata is applicable to their present lawsuit. In conjunction with this, the Nodlands assert that the doctrine of res judicata does not apply to bar subsequent litigation over questions deemed immaterial in the previous decision of this Court nor as to questions found by this Court to be unnecessary to its previous decision. The Nodlands also assert that subsequent events have created a new legal situation and rights between the litigants which were not adjudicated in the former judgment.

Nokota asserts that there has been no change in circumstances because at the time of our previous decision it owned an interest in the coal lease (royalty interest) and the only change is that at this time it has a larger interest in the coal lease because of the reassignment by NAERCO, Inc. Thus, Nokota asserts that our previous decision considered its interest and that any claims as to those interests were finally and fully resolved. In conjunction with this, Nokota asserts that the issues in the present and former actions are identical (rescission of interest in the coal lease); the parties are the same (Nodland and Nokota); that notwithstanding our statement that

we reached but one of the issues, the interests of Nokota were necessarily involved in our prior decision because Nokota's royalty interest in the lease existed before and after the case was decided; and there has been no substantial change in circumstances because Nokota has only obtained another interest to add to its already existing interest in the coal lease. Further, Nokota points out that the mandate in the previous case stated that the judgment appealed from "is hereby reversed" and that the judgment pursuant to the remittitur of this Court said that "the judgment heretofore entered herein on the 5th day of July, 1977, be and the same is hereby in all things reversed, discharged and vacated."

In *Robertson Lumber Co. v. Progressive Contractors, Inc.*, 160 N.W.2d 61, 76 (N.D. 1968), we said:

"The term 'res judicata' means a thing or matter has been definitely and finally settled and determined on its merits by the decision of a court of competent jurisdiction."

■ In this respect the decision of this Court controls rather than the judgment on remand in determining if the subject matter is res judicata.

■ In order for a matter to be res judicata it must have been actually decided and determined and merely to find that it could have been included or could have been determined is not sufficient. *Matter of Estate of Nelson*, 281 N.W.2d 245 (N.D.1979); *Dolajak v. State Automobile and Casualty Underwriters*, 252 N.W.2d 180 (N.D.1977).

In *Larimore East View Development, Inc. v. City of Larimore*, 275 N.W.2d 309, 314 (N.D.1979), we said:

"We have consistently recognized that issues litigated in a previous action between the same parties are conclusively settled by that judgment, and may not be litigated in a subsequent action between the same parties, regardless of the form the issue may take in the subsequent action."

See also, *Nordick v. Richland County Board of Drain Commissioners*, 313 N.W.2d 763 (N.D.1981).

■ The doctrine of res judicata is not applicable as to issues and facts not considered or decided in prior proceedings. *BeBeau v. Granrud*, 184 N.W.2d 577 (N.D. 1971); *H. A. Thompson & Sons, Inc. v. Hahn*, 135 N.W.2d 166 (N.D.1965).

■ A finding of the trial court not passed upon by an appellate court because it was unnecessary for the appellate court's decision does not leave that finding res judicata between the parties. See e.g., *Moran Towing & Transportation Co. v. Navigazione Liberia Triestina*, 92 F.2d 37 (2d Cir. 1937), *cert. denied*, 302 U.S. 744, 58 S.Ct. 145, 82 L.Ed. 575 (1937); *Reighley v. Continental Illinois National Bank & Trust Co. of Chicago*, 323 Ill.App. 479, 56 N.E.2d 328 (1944); *State v. Missouri Public Service Corp.*, 351 Mo. 961, 174 S.W.2d 871 (1948), *cert. denied* 321 U.S. 793, 64 S.Ct. 786, 88 L.Ed. 1082 (1944); *Spreyer, Inc. v. Goodyear Tire and Rubber Co.*, 222 Pa.Super. 261, 295 A.2d 143 (1972); *Sterling National Bank & Trust Co. of New York v. Charleston Transit Co.*, 126 W.Va. 42, 27 S.E.2d 256 (1943), *cert. denied* 321 U.S. 777, 64 S.Ct. 619, 88 L.Ed. 1071 (1944).

■ We believe the language of our previous opinion as a whole reflects that only the interest of NGP were considered and resolved and that Nokota's interest in the lease (royalty interest) was not considered or resolved.

The issue resolved in our previous decision and those issues raised by the Nodlands in the present action against Nokota are not substantially identical so as to be barred by the doctrine of res judicata. See, *Nordick v. Richland County Board of Drain Commissioners, supra*.

In this respect certain language of that opinion and our mandate must be qualified by the limited language of our opinion which reflects that we reached only one issue raised by the appellants and that we

held that Nodland was not entitled to the remedy of rescission as to NGP. Furthermore, we believe the findings of fact, conclusions of law, and the order for judgment on remittitur and the judgment on remittitur reflects that our decision only considered the Nodlands' right to rescind as to NGP.

Although it is true that at the time of our previous decision Nokota retained an interest in the coal lease (i.e., royalty interest) and that that interest could have been dealt with, we do not believe any language in our previous opinion can in any manner be read to deal with that interest as related to the Nodlands.

The North Dakota Supreme Court, in *Heald v. Strong*, 24 N.D. 120, 138 N.W. 1114 (1912), when section 101 of the North Dakota Constitution was still in effect, which in part provided that "every point fairly arising upon the record of the case shall be considered and decided, and the reasons therefor shall be concisely stated in writing . . ." made the following observation on page 1119:

> "It is absurd to impute to the framers of the Constitution an intent to require of the courts a decision of every point raised, regardless of whether a decision of other and controlling points in legal effect puts an end to the litigation. It would not only force upon the court needless labor, but it would be an unwise and dangerous practice, as it would inevitably result in laying down hastily prepared precedents of points naturally not as carefully considered as those which are necessarily controlling and decisive of the appeal. In view of this, it is well settled that, when necessary and controlling points are decided, the other questions cease to fairly arise on the record."

The foregoing observation by the Court is as pertinent, if not more, now than at the time it was made because since then the North Dakota Constitution has been amended and section 101 has been replaced by § 5 of Article VI. Section 5 provides in part

that "when a judgment order is reversed, modified or confirmed by the Supreme Court the reason shall be concisely stated in writing." The requirement that every point fairly raised on the record be decided and reasons given is no longer a part of the Constitution.

Notwithstanding that our previous decision did not address Nokota's interest in the coal lease, Nokota asserts that the Nodlands cannot now raise those issues because they did not file a petition for rehearing and they did not question the findings of fact, conclusions of law, and order for judgment on remittitur, or appeal from the judgment on remittitur.

█ Generally, proper objections to clarify questionable findings of fact, conclusions of law or judgment on remittitur are advisable because they may eliminate potential or dormant issues which might otherwise surface later.

█ However, we do not believe the failure by the Nodlands, or for that matter, any party to petition for rehearing or question the findings of fact or judgment on remittitur constitutes a waiver of any issues which were not disposed of in the Supreme Court opinion.

Having concluded that issues presented by this lawsuit are not res judicata, we believe summary judgment was not appropriate because genuine issues of material fact exist concerning Nokota's interest in the coal lease. Rule 56(c), North Dakota Rules of Civil Procedure. Accordingly, we remand the case for further proceedings on the issue of the interests in the coal lease now owned by Nokota.

In so doing, we believe it will be helpful to treat the interests separately (i.e., royalty interest) originally retained by Nokota and interest assigned to Nokota by NAERCO, Inc.) and determine if the Nodlands are entitled to rescission, as to each interest. Furthermore, we also believe that the concept of law announced in *Independent Coal*

*& Coke Co. v. United States*, 274 U.S. 640, 648, 47 S.Ct. 714, 717, 71 L.Ed. 1270 (1927), that "a purchaser with notice of an outstanding equity, despite a transfer to an innocent purchaser for value, may not on a later repurchase hold free of the equity" may be applicable if the facts, as developed on remand, are such as to warrant the application of that concept.

Accordingly, the district court judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.